————o————

WM. PAGE, *et al.*, Appellants, *vs.* LEWIS DIXON, *et al.*, Respondents.*

1. *Deed of trust—Land bought in by wife of maker—Note and deed of trust given by wife for purchase money—Effect of sale as to creditors.*—Where land sold under a deed of trust was purchased by the wife, and to secure the purchase money she executed to the trustee her note secured by her deed of trust, *held,* that although the note and deed were void, yet the sale would, in the absence of fraud in fact, be valid as against the claims of creditors acquired after the first deed of trust.

2. *Fraud—Verdict of jury on ground of, set aside when.*—On questions of fraud in fact the verdict of a jury is not conclusive, but will not be disturbed by the Supreme Court, on the ground of fraud shown, unless the facts are entirely irreconcilable with the hypothesis of honesty and good faith.

*Appeal from Bates Circuit Court.*

Plaintiffs in their petition pray to have the deed from Dejarnett to Elizabeth Dixon, and also the trust deed made by Elizabeth Dixon conveying the lands to secure the purchase money to Dejarnett set aside, on the ground of fraud.

*Page & Holcomb*, for Appellants.

I. The sale made by Dejarnett to Elizabeth Dixon under the mortgage, was fraudulent, and the deed made by him to her should have been declared fraudulent and void, as a matter of fact. (Allen vs. Berry, 40 Mo., 282.)

II. Admitting that Mrs. Dixon purchased the land, and that the relation she held to Lewis Dixon, as his wife, would not prevent her from purchasing his property at such a sale and holding it, adversely to him, still to defeat the claim of Dixon's creditors, it must appear that she paid for the property with her own money, or at least with money that was not her husband's. (Potter vs. Stevens, 31 Mo., 62; Pawley vs. Vogel, 42 Mo., 291; King vs. Moore, 42 Mo., 551; Mc-Laran vs. Mead, 48 Mo., 115; Rippey vs. Rippey, 46 Mo., 571; Eddy vs. Baldwin, 23 Mo., 588; Rankin vs. Harper, 23 Mo., 579.)

III. Mrs. Dixon's note and deed of trust were utterly void. A *feme covert's* contracts are null. (Bauer vs. Bauer, 40 Mo., 61; Higgins vs. Peltzer, 49 Mo., 152.) The purchase of this property and the conveyance of it to her by Dejarnett, did not make it her separate estate. There are no words in the deed such as are necessary to create in her a sole and separate estate. (Schafroth vs. Ambs, 46 Mo., 580; Huff vs. Price, 50 Mo., 228.)

IV. Having paid nothing for this property, nor incurred any legal liability to pay for it, the conveyance of it to her is without any valuable consideration in law, and is absolutely void. (Wagn. Stat., 280, § 4; Woodford vs. Stephens, 51 Mo., 443.) It cannot be sustained upon the ground that it is founded upon the consideration of love and affection, for at the time of the conveyance to her, Dixon was insolvent, and he must be just before he can be generous. (Gamble vs.

Johnson, 9 Mo., 589; Lane vs. Kingsbury, 11 Mo., 402,; Woodson vs. Pool, 19 Mo., 340.)

V. Admitting that the sale to Mrs. Dixon had been fair, not tainted with fraud, and that she paid for the land out of her sole and separate property, still we claim that the relation she bore to Lewis Dixon (her husband) was such as to prevent her from acquiring a title adverse to his title. (Barringer vs. Stiver, 4 Am. Law. Reg., 559; Frossell vs. Rozier, 19 Mo., 448; Evans vs. Gibson, 29 Mo., 223.)

VI. This being an equitable proceeding, this court will reverse it if the evidence did not warrant the finding. (King vs. Moore, 42 Mo., 551; Rippey vs. Rippey, 46 Mo., 571; Pawley vs. Vogel, 42 Mo., 291; Potter vs. Stevens, 31 Mo., 62.)

*Waldo P. Johnson*, for Respondents.

I. The first point decided by the jury and sanctioned by the court, was, that the sale made on the 10th day of April, 1868, was not made with intent to hinder, delay, or defraud the creditors of said defendant, Lewis Dixon, and the second point decided, was, " that the money alleged by defendant to have been paid by defendant, Elizabeth Dixon, was paid out of her sole and separate estate." (Hardin vs. Phelps, 51 Mo., 332.) The court found accordingly, and its finding was conclusive. (Hale vs. Coe, 49 Mo., 181.)

II. Fraud must be proved, and cannot be presumed. There is no proof of fraud in this case. The evidence is clear and conclusive.

NAPTON, Judge, delivered the opinion of the court.

The petition in this case states, that on the 25th of October, 1867, Hackett, administrator, recovered of Dixon $707, and on the 25th of October, 1867, George W. Seiver recovered of Dixon $375; that executions were issued on these judgments bearing date March 11th, 1868; that the sheriff of Bates county levied these executions on the 12th of March, 1868, on certain lands described in the petition, and that plaintiffs became the purchasers.

Before this, on the 7th of May, 1861, Lewis Dixon and his wife made a deed of trust to Dejarnett, to secure the payment of two notes, amounting to about $600, dated in 1861, and Dejarnett was authorized to sell to the highest bidder at the court house door, after giving a specified notice. The petition states that Djearnett, on the morning of the 10th of April, 1868, fraudulently proceeded to sell said lands, and that Elizabeth Dixon, wife of said Lewis Dixon, became the purchaser. The petition avers that the sale was made at an unusual hour—8 o'clock in the morning—and that said sale was made after levies had been made of the executions, under which plaintiffs were purchasers. It is further stated, that Elizabeth Dixon, on the 10th day of April, 1868, executed and delivered to one Tucker, a deed of trust of these lands, to secure the note to Dejarnett, for the money she bid on the land.

The plaintiffs claim that this sale under the deed of trust to Dejarnett was fraudulent, and that they, as purchasers under the execution sale as against Lewis Dixon, had the better title. And this question of fraud was submitted to a jury by the Circuit Court, and on this question the jury found for the defendants. On the trial before the jury, a great number of of instructions were asked, some of which were given and some refused. It is not necessary to copy these instructions. The verdict was not conclusive in the Circuit Court, nor in this court.

The facts in the case are really not disputed, except as to the hour of the day on which the trust sale took place. It does not appear that any particular time was specified in the deed, except that the notice was to be 20 days before the sale, and the sale was to be at the court house of Bates county. There was an attempt to show that notices were not duly given in conformity to the deed, but the testimony of the person who put up these notices seems to be conclusive on this point.

The evidence was conflicting as to the time of day at which the sale was made, some witnesses thinking it was as early as

(9) nine o'clock, and others, among whom was the trustee, Dejarnett, testifying that it was after 10 A. M. The evidence on this point was nowise important unless so far as it tended to show a fraudulent conspiracy on the part of the trustee with the grantor in the deed, to put the property beyond the reach of the grantor's creditors. And the main question in the case was, in the Circuit Court, and is here, whether this sale of Dejarnett was designed to protect Dixon's property from the reach of his creditors. The sale was made to Dixon's wife, and Dejarnett, the trustee, made a deed to Mrs. Dixon, and Mrs. Dixon gave her note for a part of the purchase money, and executed a deed of trust to one Tucker to secure to Dejarnett the payment of her note. This transaction it is urged, was a mere nullity, as Mrs. Dixon could not be held bound on her note nor on her deed of trust. This is true, but the question remains, how far the plaintiffs have a right to complain of such imperfect security, so long as Dejarnett was satisfied. It is clear that they have none, but the facts are adduced to establish the fraudulent intent of Dejarnett, and in this view they are certainly of much force. This is based on the general principle, that creditors are sagacious enough not to give up good securities for invalid ones.

But there is also another general principle acted on by courts in their investigation of cases of this character, that in determining the motive and character of the acts of parties, where such acts may be ascribed to either good or bad motives, they will presume such acts to have sprung from honest intentions, unless there is clear evidence to the contrary.

There was no evidence to establish improper motives on the part of Dejarnett, except that the sale took place at an early hour of the day, and the plaintiffs did not get to the court house till after the sale was over, and never saw the advertisements of the sale. The plaintiffs had judgments against Dixon, subject to the mortgage. At the mortgage sale it was their right and interest to see that the land brought its full value. They knew very well that this mortgage, having

been executed and recorded long anterior to the claims on which they got judgments, was entitled to priority over their judgments, and that a sale under it would carry the title, and if they supposed the land was worth greatly more than the mortgage debt, they had the right, with others, to see that the land brought its full value. There is no evidence concerning the real value of this land, a material fact in the issue presented. Nor did the petition allege that Dixon had no other lands or other property. The proof however, establishes that he did have no other property; and this defect in the petition may therefore be overlooked.

There is no question concerning the *bona fides* of the mortgage—when it was made—nor is there any pretense that when it was made in 1860, Dixon was in debt, or that it was made with any view whatever to defraud his creditors, if indeed he had any at that time. The circumstances relied on to establish fraud, whilst they are undoubtedly marks of fraudulent designs, are also consistent with the hypothesis of good faith and when that is the case, this court, on a mere review of the facts, would be very reluctant to disregard the verdict of the. jury, and the subsequent adoption of that verdict by the Circuit Court.

To justify such a course, the facts must be entirely irreconcilable with the hypothesis of honesty and good faith. And upon this view of the case, the judgment of the Circuit Court is affirmed.