ROBERT M. BEVIN ET AL., Plaintiffs in Error, v. R. W. POWELL ET AL., Defendants in Error.

### November 29, 1881.

1. Appellate courts will review only matters arising upon the record proper, where no motion for a new trial, and no motion in arrest of judgment, is filed.

2. In an equitable proceeding, it may be immaterial that a mortgagee was not sane at the date of the execution of a mortgage executed in strict pursuance of a specific written agreement entered into by the mortgagee when sane.

3. Any relief appropriate to the facts alleged and proved may be granted under a prayer for general relief, whether asked for in an answer setting up affirmative matter, or in the petition.

4. The findings of a jury upon special issues submitted to it in chancery, are not conclusive upon the chancellor nor upon the appellate court.

ERROR to the St. Louis Circuit Court, WICKHAM, J. *Affirmed.*

W. G. RAINEY and BROADHEAD, SLAYBACK & HAEUSSLER, for the plaintiffs in error: A grantor in a deed may avoid his conveyance by proof that he was *non compos mentis* at the time of its execution.—*Crawford* v. *Scovel*, 20 Am. L. Rec., 61; *Bensell* v. *Chancellor*, 5 Whart. 371; *Gibson* v. *Soper*,

3 Gray, 279. "Mental incapacity at the time of contracting is a good defence against a contract, whether that contract be evidenced by deed or parol. If the mind be incapable of assenting, the law pronounces the contract void."— *Reinskoff* v. *Rogge*, 37 Ind. 207; *Tolson* v. *Garner*, 15 Mo. 494; *Briggs* v. *Ewart*, 51 Mo. 274; *Martin* v. *Smylee*, 55 Mo. 577; *Shirts* v. *Overjohn*, 60 Mo. 305; *Washington Savings Bank* v. *Ecky*, 51 Mo. 272; *Trigg* v. *Taylor*, 27 Mo. 245; *Haksell* v. *Champion*, 30 Mo. 136; *Ivory* v. *Michael*, 33 Mo. 398.

HENDERSON & SHIELDS, for the defendants in error: A conveyance executed by a person *non compos mentis* and not under guardianship is not absolutely void, but voidable only.—Wag. Stats., p. 712, sects. 4, 5; p. 715, sect. 32; *Folsom* v. *Garner*, 15 Mo. 494; *Wait* v. *Maxwell*, 5 Pick. 217; *Allis* v. *Billings*, 6 Metc. 415; *Crouse* v. *Holman*, 19 Ind. 30, 36; *Arnold* v. *Iron Works*, 1 Gray, 434; *Musselman* v. *Cravens*, 47 Ind. 1; *Jackson* v. *Gumœr*, 2 Cow. 552–568; *Hovey* v. *Hobson*, 53 Me. 451; *Newell* v. *The People*, 5 Seld. 45; *Sims* v. *McClure*, 8 Rich. Eq. 286.

THOMPSON, J., delivered the opinion of the court.

William T. Bevin, the ancestor of the present plaintiffs, brought this action to set aside a deed of trust executed by him, on the ground that at the time of its execution he was *non compos mentis*. His original petition, in addition to an allegation that he was of unsound mind at the time he made the deed, contained charges of fraud. Upon this petition the county court, during a vacation of the circuit court, granted him an injunction against the enforcement of the deed of trust. Afterwards he was permitted by the circuit court, without prejudice to his injunction, to file an amended petition omitting the charges of fraud, and asking for equitable relief upon the sole ground of incapacity to make the deed.

The answer, besides denying specifically the allegations

of the petition, sets up, as an affirmative defence, that the deceased plaintiff and one Barry & Turner were tenants in common of a certain piece of ground in St. Louis, of which, for convenience, the deceased plaintiff held the legal title ; that they agreed to build nine houses upon this tract ; that the deceased plaintiff, who was a builder, was to superintend the building of the same ; that Barry & Turner were to furnish the necessary money ; that it was agreed between these three parties that the deceased plaintiff would convey to Barry & Turner their portions and would give a deed of trust upon the houses which should fall to him, to secure the advances which they should thus make ; that during the progress of the building the plaintiff was attacked with paralysis of the right side and of the tongue, but not so as to be deprived of the use of his faculties ; that, at his request, his brother undertook to carry out the contract with Barry & Turner, and that the contract was executed by Barry & Turner on their part ; that under it a sum exceeding $5,000 was advanced by them to the plaintiff, to secure which the plaintiff executed and delivered the deed of trust in question ; that the notes secured by the deed of trust were assigned by Barry to William McManus, for their full value ; that neither Barry, Turner, nor McManus had any reason to suspect that the plaintiff was *non compos mentis* at the time, and that in fact he was in the full possession of his faculties, and honestly discharging his contract with them ; that he also conveyed to Barry & Turner their respective portions of the land as agreed ; that the deceased plaintiff had ever since remained in possession of the premises conveyed in the deed of trust, receiving the rents and profits thereof, and had never offered no repay the money so advanced by Barry & Turner, and that he was insolvent. The answer then concludes with the following prayer for relief: "Wherefore defendant asks that a receiver may be appointed to take possession of said property and receive and collect the rents thereof, *pendente lite*, and that plaintiff's

petition may be dismissed, and for such other orders and judgments as to the court may seem proper." A reply put in issue the new matter contained in the answer.

The learned judge submitted seven special issues to a jury and they returned a verdict thereon. This verdict was set aside, and thereafter he submitted to another jury, at the request of the plaintiff, two special issues, as follows: 1. " Was William T. Bevin *non compos mentis* or unsound in mind on the fifteenth day of July, 1873, the day the notes and trust-deed described in the petition were executed? 2. If he was *non compos mentis* on the fifteenth day of July, 1873, has he recovered his mind; and if so, was it before the bringing of this suit?" The jury found that he was *non compos mentis* on the date named, and that he had recovered his mind before the bringing of the suit. Thereupon a motion for rehearing and to set aside these findings, made by the defendants, was overruled. The plaintiff then moved for a final decree on these special findings, which motion the court overruled. The court then, of its own motion, referred the case to a referee, " to try all the questions raised by the pleadings herein, save and except the question of *non compos mentis*." Upon these two rulings, — the refusal of the court to enter a decree upon the special findings, and the order of reference, — the plaintiff took a bill of exceptions. In the meantime the plaintiff died, and his heirs, the present plaintiffs, were made parties.

Afterwards, the report of the referee came in; was excepted to; the exceptions were overruled, and the court rendered a judgment dismissing the plaintiffs' petition. Afterwards, the court sustained a motion for rehearing; set aside the order overruling the exceptions to the report of the referee and the judgment dismissing the cause; reinstated the cause on the docket; sustained the exceptions to the referee's report; gave the plaintiffs leave to amend their petition, and then referred the cause to another referee,

" to hear additional testimony, if necessary, and to take and state the account between Bevin and Barry & Turner, or either of them." Upon the order of the court again referring the case, the plaintiffs took another bill of exceptions.

Then there was a stipulation that the new referee might make specific findings in his report, " so as to show how the accounts stood between Barry and Turner, or either of them, and Bevin, at the time of the making of the deed of trust and notes, and also at the time when this suit was brought." This stipulation was made without prejudice to any right of objection to the authority of this referee. This referee's report came in ; exceptions thereto were overruled ; and thereupon the court entered a final decree upon the pleadings, evidence, and findings of the referee, finding the issues for the defendants ; finding " that the defendant Thomas W. McManus is entitled to have and receive from the estate of William T. Bevin, deceased, the sum of $7,875, being the amount of money received on the notes and deed of trust in controversy, by said William T. Bevin, to his own use and benefit." The decree then declares that this sum is an equitable lien upon the land conveyed in the deed of trust, describing it ; orders a foreclosure of this lien and a sale to effect the same, and bars the plaintiff's equity of redemption therein.

There was no motion for a new trial and no motion in arrest of judgment. In such cases it is well settled that we can consider nothing which is contained in any bill of exceptions embodied in the record, but only such errors as may be apparent upon the face of the record proper ; and the reason of the rule is, that it is but just that the attention of the trial court should be specifically directed to errors which it is supposed to have committed, to the end that they may be corrected in that court, without subjecting the other party to the delay and expense of a re-examination of the case in an appellate court. This rule and the reason upon

which it rests have been many times reiterated by the supreme court. *Exchange Bank* v. *Allen*, 68 Mo. 474; *Brady* v. *Connelly*, 52 Mo. 19; *Banks* v. *Lades*, 39 Mo. 406; *McCoy* v. *Farmer*, 65 Mo. 247; *Acock* v. *Acock*, 57 Mo. 155; *Curtis* v. *Curtis*, 54 Mo. 351; *The State* v. *Marshall*, 36 Mo. 400; *Lancaster* v. *Insurance Co.*, 62 Mo. 121; *Morgner* v. *Kister*, 42 Mo. 466; *Collins* v. *Barding*, 65 Mo. 496. The record proper, within the meaning of this rule, is nothing more than the original process with the return thereon, the pleadings, orders substituting parties, and the entry of final judgment. See *Bateson* v. *Clark*, 37 Mo. 31, 34. Errors which are apparent upon the record proper must be considered and corrected by us, although there is no bill of exceptions, no motion for a new trial, and no motion in arrest of judgment. *Funkhouser* v. *Mallen*, 62 Mo. 555; *The State to use* v. *White*, 61 Mo. 441; *Ancell* v. *Cape Girardeau*, 48 Mo. 80. Illustrations of this rule will readily suggest themselves. Where a demurrer is sustained to the petition, and final judgment thereupon entered for the defendant (*The State to use* v. *White*, 61 Mo. 441; *Ancell* v. *Cape Girardeau*, 48 Mo. 80; *O'Connor* v. *Koch*, 56 Mo. 253); where the answer is held to set up no defence, and judgment is thereupon rendered for the plaintiff upon motion (*Funkhouser* v. *Mallen*, 62 Mo. 555); or where the suit is brought in the wrong name *Hannibal, etc., R. Co.* v. *Mahoney*, 42 Mo. 467); — in these and like cases the ruling will be examined in the appellate court, although there is no bill of exceptions, and no motion for a new trial or in arrest of judgment. But where the ruling relates to some matter of procedure, such as the admission or rejection of evidence, or the giving or refusing of instructions, or the like, it cannot be re-examined on appeal or writ of error, unless two things concur: 1. It must be made a part of the record by a bill of exceptions. 2. The attention of the trial court must be specifically directed to it by a motion for a new trial, filed

within the time limited by the statute, and embodying the grounds of error complained of. Unless a motion for a new trial is thus made, any bill of exceptions taken during the progress of the case in the trial court is so much white paper, and cannot be considered by the appellate court for any purpose. *Wetherall* v. *Harris*, 51 Mo. 65; *Hatcher* v. *Moore*, 51 Mo. 115; *Ward* v. *Quinlivin*, 65 Mo. 453.

It follows from this that the two bills of exceptions raising questions which the plaintiff's counsel, ask us to consider, might as well have been left out of the transcript. We cannot look to them for any purpose in making up our judgment. It was not at all necessary to state, as we have done in the former part of this opinion, their contents. We have done it merely to point some observations which we shall hereafter make in deference to the positions taken by the plaintiff's counsel. The only question for our judgment is, whether, upon the amended petition, the answer, the record-entry introducing new parties plaintiff, and the entry of final judgment, there is any apparent error, such as will warrant us in reversing the judgment. We cannot discover any. There is really nothing to consider upon such a record as this, except the question whether the judgment which was rendered was such a judgment as could rightfully have been rendered in the state of the pleadings. In order to determine this, we must presume, in conformity with well-settled principles, that everything was proved in the court below in support of the judgment which could properly have been proved under the affirmative allegations in the defendants' answer.

And what then could have been proved? It could have been proved that Bevin was, at the time of the execution of the deed of trust, indebted to Barry & Turner in the full amount secured thereby, and that Bevin was *compos mentis* at the time of the execution of the deed of trust. It could have been proved that this deed of trust was executed

in accordance with a prior specific written agreement made between Bevin and Barry & Turner that it should be so executed, in which event it would become immaterial whether Bevin, at the time of its execution, was sane or insane. A court of equity would, upon well-settled principles, treat that as done which ought to have been done, and which the parties intended should be done, and would give effect to the precedent contract as an equitable mortgage or lien, and would proceed to foreclose the same without driving the defendant to the delay and expense of a separate suit to that end. *McQuie* v. *Peay*, 58 Mo. 56 ; *Blackburn* v. *Tweedie*, 60 Mo. 505 ; *Dunn* v. *Raley*, 58 Mo. 134; *Harrington* v. *Fortner*, 58 Mo. 468; *McClurg* v. *Phillips*, 57 Mo. 214 ; *Kenney* v. *Matthews*, 69 Mo. 520, 523 ; *McClurg* v. *Phillips*, 49 Mo. 315. As the answer is in the nature of a cross-bill, praying for affirmative relief, it certainly would have warranted the decree which was rendered, unless the defendant has not acquired the right to such a decree by specifically praying for it in his answer. Certainly, if the question were one of first impression, it might be argued with much force that the defendant cannot, under a prayer for a receiver, for a dismissal of the plaintiff's bill, and for general relief, have a decree, the effect of which is to foreclose a mortgage and bar an equity of redemption. But the decisions of our supreme court have been so liberal in allowing, under a prayer for general relief, any relief appropriate to the facts alleged and proved, that all difficulty under this head vanishes. That court has said that "if the allegations in the petition entitle the plaintiff to any measure of redress, a deaf ear will not be turned to his complaint simply because he thinks that justice should be dispensed to him in a particular way, other than, and different from, that to which he is actually entitled." *Biddle* v. *Ramsey*, 52 Mo. 153, 159 ; *Pomeroy* v. *Benton*, 57 Mo. 531, 550. And this rule applies to a prayer for general relief in an answer which sets up affirmative matter,

as well as to such a prayer in the petition. *Snider* v. *Coleman*, 72 Mo. 568.

Other questions are strenuously insisted on for the plaintiffs : First, that the court erred in refusing to enter a final decree upon the special finding of the second jury, in accordance with the prayer of the plaintiffs' petition. We have already shown that this is a question which we cannot consider at all in the state of the record. But it will perhaps be more satisfactory to say that if we could consider it, the plaintiffs' position is clearly not well taken. The rule in Missouri in regard to the trial by jury of special issues in chancery cases does not seem to be essentially different from that which obtains under the chancery practice which formerly obtained in England, and which still subsists in the federal courts. Such issues were submitted to the jury at the discretion of the chancellor to inform his conscience, and not to control his judgment. It is so with us. The judge sitting in an equity case is not bound, under any circumstances, to submit special issues to a jury. *Lockwood* v. *Lunsford*, 56 Mo. 68 ; *Gay* v. *Ihm*, 3 Mo. App. 588. Nor is the finding of the jury upon such issues, when submitted to them, conclusive upon him or upon an appellate court. *Page* v. *Dixon*, 59 Mo. 43 ; *Hambright* v. *Brockman*, 59 Mo. 52 ; *Hess* v. *Miles*, 70 Mo. 203. The court may, in such a case, set aside the findings and submit the issues to another jury, as was done in this case ; or it may disregard the findings altogether, and pronounce its own judgment upon the issues upon the final hearing. *Weeke* v. *Senden*, 54 Mo. 129. So far from such a verdict being conclusive, it has been held that when a jury is empanelled to try such an issue, it is not error for the court to instruct them peremptorily what verdict to render. *Hess* v. *Miles*, *supra*. Applying these rules to the present case, we cannot say, in the state of the record, that the court, upon the final consideration of the evidence, regarded or disregarded the special findings of

the second jury upon the question of Bevin's sanity. Certainly the learned judge was at liberty to disregard it wholly, and to make up his own finding upon that question upon the evidence heard by him in open court, or taken before the referee.

The last objection is that the court had no power, of its own motion and against the objection of the defendant, to refer the case to a referee. This, too, is a question which, in the state of the record, we are not at liberty to examine. The bill of exceptions taken to this ruling is, as we have already said, nothing more than so much blank paper, by reason of the fact that a new trial was not asked for upon this ground, nor upon any other ground. If a specific authority were wanted upon this point, it is found in the decision of the supreme court that the action of the trial court in denying to a party the right of trial by jury cannot be reviewed in the supreme court, unless there has been a motion for a new trial upon that ground. *Ward* v. *Quinlivan,* 65 Mo. 453. But if we were required to rule upon this point, we could see enough in the record as it stands to vindicate the propriety of the court's action. The answer sets up a claim between three tenants in common by which they were to build some houses, the one superintending the work and the others furnishing the money. It alleges that the indebtedness secured by the deed of trust arose in this way. The reply puts in issue the question of indebtedness. It is readily seen that this may have involved an examination of complicated accounts which could best be examined in a referee's office, and which the statute (Rev. Stats., sect. 3606) allows the court to refer without the consent of parties. Certainly there is nothing here which puts the circuit court in the wrong, even if we could consider the question as properly before us for review.

We shall make but one other observation. We gather from the record and from the briefs that the whole struggle of the plaintiff was to show that the deed in question and

the notes were executed and delivered when he was *non compos mentis;* that they were hence void and wholly incapable of ratification, as much so as though they had been the result of a forgery. This was evidently the issue upon which the plaintiffs' counsel endeavored to have the case fought out. It is the principal question discussed in the briefs before us. If the question were raised by the record, it would be interesting to inquire whether the deed of an insane person ought to be treated as wholly void, or voidable only. As we understand it, this question has never yet been distinctly decided in this state. It is a question upon which eminent courts have differed. We decline to express or intimate any opinion upon it, for it is unseemly and highly improper for the judges of an appellate court to express opinions upon unsettled questions which are not before them for consideration.

It results from the foregoing that the judgment must be affirmed. All the judges concur.