State v. Gritzner.

IN BANC.

THE STATE v. GRITZNER, *Appellant.*

Division Two, June 2, 1896.

1. **Criminal Law:** OPTION DEALING: EVIDENCE. Evidence that tele-
grams were sent by a grain dealer in this state to a commission firm in
another state instructing it to purchase "five wheat," without stating
for whom; that the witnesses "understood" it to mean five thousand
bushels of wheat; that the dealer spoke to others of buying "five or
ten of wheat;" that one witness thought he was buying both cash and
future grain; and statements of the dealer as to option sales and pur-
chases to and from other parties than the firm in question, is insuffi-
cient to support a conviction of the dealer for option dealing under the
provisions of Revised Statutes, 1889, section 3931, declaring option
sales and purchases of grain and contracts for the same, criminal
offenses, and section 3932 declaring the offense to be complete whether
the offer to buy or sell was complete or not.

2. ———: ———: ———: TELEGRAM. In a prosecution for offering to
make an option purchase of grain in violation of sections 3931, 3932,
Revised Statutes, 1889, where the offer was made by telegram, the
telegram was inadmissible without proof that it was received by the
telegraph company at the point of delivery, or that it had been
delivered to the person to whom the offer was made, or at his office
according to usage.

3. ———: ———: PRESUMPTION. A telegram from a grain dealer to a
commission firm directing the latter to buy grain will be presumed to
be in respect to a legal, rather than an illegal, transaction.

State v. Gritzner.

4. **Laws:** CONSTRUCTION: EXTRA-TERRITORIAL JURISDICTION. The laws of a state are ordinarily for the government only of persons and things within the state, and where they are in mere general terms they will be construed as not intended to create offenses, or otherwise regulate the conduct of parties, beyond its territorial limits, and where it is competent for one state, by legislation, to bind its citizens in another state, it can only be done by express words or distinct implication.

5. **Criminal Law:** OPTION DEALING: STATUTES: JURISDICTION. A telegram to a commission firm in another state to purchase grain on option is an offer to purchase in the foreign state and, if an offense at all, is alone within the jurisdiction of the latter state, and is not a violation of the statutes of this state making option sales, and purchases and contracts for the same, criminal offenses, and declaring the crime complete, whether the offer to sell or buy is complete or not. R. S. 1889, secs. 3931, 3932.

6. ———: JURISDICTION. A person can not be punished in this state for an offense consummated in another state, even though some act constituting a part of the offense, or making it possible, was consummated in this state.

7. **Criminal and Penal Statutes:** CONSTRUCTION. Criminal and penal statutes should be strictly construed, and no one should be made subject to their provisions by implication, and only such transactions are covered by them as are within both their spirit and letter.

8. ———: ———. Where a statute defining an offense designates one or more classes as subject to its penalties, all others not so designated will be deemed to be excluded from the prescribed punishment.

9. **Criminal Law:** OPTION DEALING: SPECIAL LAW: DUE PROCESS OF LAW. Section 3931, Revised Statutes, 1889, declaring all option purchases and sales and the contracts for the same, "of the shares of stocks or bonds of any corporation, or petroleum, provisions, cotton, grain, or agricultural products" gambling and criminal offenses, is not a special law, nor in violation of article 2, section 30, of the constitution of this state declaring that no person shall be deprived of life, liberty, or property without due process of law.

*Appeal from Saline Criminal Court.*—HON. JOHN E. RYLAND, Judge.

REVERSED.

*Davis & Duggins* for appellant.

(1) Sections 3931, 3932, Revised Statutes, 1889, are unconstitutional. *First.* Because the enforcement

thereof would tend to deprive citizens of the state of their liberty or property without due process of law. *Second.* Because by the enactment of said sections, the legislature attempted to legislate against the trading and dealing in certain articles of personal property, when a general law embracing all kinds of personal property could have been enacted. *Third.* Because said sections are special laws tending to regulate the practice in judicial proceedings and also change the rules of evidence in said proceedings. And whether a general law can be made applicable in any case, is hereby declared a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subject. Const., sec. 53, art. 4. No person shall be deprived of life, liberty, or property without due process of law. Const., sec. 30, art. 2. The general assembly shall not pass any local or special laws: (*a*) Regulating the practice or jurisdiction of or changing the rules of evidence in any judicial proceeding or inquiry before courts. (*b*) In all other cases where a general law can be made applicable, no local or special law shall be enacted. Const., sec. 53, art. 4; *State v. Loomis*, 115 Mo. 307; *State v. Granneman*, 132 Mo. 326. (2) The court erred in admitting illegal and incompetent testimony. Witnesses should state the facts, not their conclusions, understandings, or opinions. *State v. Miller*, 44 Mo. App. 159; *Nelson Mfg. Co. v. Mitchell*, 38 Mo. App. 321. (3) The witness, Bridges, was permitted to describe and define option dealing and give his idea of what an option deal is. This was error. *Russ v. Railroad*, 112 Mo. 45. (4) Defendant's demurrer to the evidence offered by the state should have been sustained. There is no evidence tending to show the commission of any offense in Saline county, or that the commission firm in Chicago ever received the telegram or offered to buy or sell any grain for defendant. (5) The sending

of a telegram to a commission firm in a city requesting the firm to buy or sell grain, is not of itself a wrongful act, and raises no presumption that it was done with any specific intent. Where the statute makes the offense to consist of an act coupled with a specific intent—the intent as well as the act must be found by the jury as a matter of fact before a conviction can be had. *State v. Gibson*, 111 Mo. 92. (6) The court erred in giving instruction numbered 1 for state. There was no evidence upon which to base said instruction. There was no evidence of any kind that defendant bought any grain of, or sold any to, the firm of J. A. Edwards & Company of Chicago, or that he offered or. pretended to buy or sell grain to said firm. The said instruction is also fatally defective in this: it states that the defendant is guilty, if he offered to buy or sell grain. The indictment charges that he bought and sold, and does not charge that he offered to buy or sell grain. The instruction should respond to the indictment. Section 3941, R. S. 1889. It erroneously left the trial court, as a matter of law, to determine the venue of the alleged crime. *State v. Sanders*, 106 Mo. 188. (7) Instruction numbered 3 is misleading and a comment upon the evidence. This instruction is predicated upon the theory that the sending of a telegram to a commission firm, asking the firm to buy or sell grain, is an unlawful act and raises a presumption that it was done with a specific intent. This is not the law. "The rule is firmly established, indeed it is elementary, that, where, as here, the statute makes an offense to consist of an act coupled with a specific intent, the doing of the act raises no presumption that the act was done with a specific intent." *State v. Gibson*, 111 Mo. 92. The doing of an unlawful act might raise a presumption of specific intent, but the doing of an act which is not

wrong or unlawful, never raises a presumption of specific intent.   3 Greenleaf on Ev., sec. 13.

*R. F. Walker*, attorney general, for the state.

(1) The indictment in this case is founded upon sections 3931 and 3932, Revised Statutes, 1889, which make the buying or selling of wheat and corn, or the pretended buying or selling of wheat and corn on option or future delivery a misdemeanor.   The indictment follows the language of the statute creating the offense, and is sufficient.   (2) Neither of these sections is in conflict with the constitution.   They do not tend to deprive the citizens of the state of their liberty or property, without due process of law; nor are they obnoxious because they are attempted legislation against trading and dealing in certain specified articles of personal property; nor are they special laws. *Connor v. Black*, 119 Mo. 126.   (3) An examination of the transcript in this case will show that none of the testimony admitted over the defendant's objection in any way affected the rights of defendant.   Most of the objections were trivial and without merit, while to a great number of them no reasons were assigned, as is now absolutely necessary in this state. *State v. Nelson*, 132 Mo. 184; *State v. Harlan*, 130 Mo. 381.   (4) It can not be contended that there is a total failure of proof in this case.   The testimony of the telegraph operator at Slater, Missouri, and the gentleman to whom the defendant had admitted his option dealings, clearly establishes his guilt.   This court will only interfere with a verdict because of the insufficiency of the testimony when there is a total failure to prove.   *State v. Fisher*, 124 Mo. 462; *State v. Punshon*, 124 Mo. 448; *State v. Banks*, 118 Mo. 117.

*Robt. M. Reynolds,* prosecuting attorney, *John G. Miller,* assistant prosecuting attorney, and *T. H. Harvey,* also, for the state.

(1) Sections 3931 and 3932 are not unconstitutional.     *First.* Their enforcement would not tend to deprive the citizens of the state of any liberty or property without due process of law.     *Second.* They do not constitute a special law, because the "dealing in futures" in certain articles of personal property is prohibited.     A statute which relates to persons or things, as a class, is a general law, while a statute which relates to particular persons or things of a class, is special.     *State ex rel. v. Tolle,* 71 Mo. 650; *State ex rel. v. Herrmann,* 75 Mo. 346; *Lynch v. Murphy,* 119 Mo. 172.     *Third.* Section 3932 is not a special law tending to regulate the practice in judicial proceedings and change the rules of evidence in such proceedings.     *Eyerman v. Blaksley,* 78 Mo. 145; *State v. Jackson,* 80 Mo. 175; *State ex rel. v. Miller,* 100 Mo. 439; *State v. Buck,* 120 Mo. 479.     (2) Witness Bridges testified positively that he was acquainted with the custom of dealing in grain known as dealing in futures, and his evidence as to what the process was, was entirely competent and legitimate.     (3) The sending of the telegrams by defendant, as described by the witness Price, was abundant evidence that defendant offered, in Saline county, to buy or sell grain, and by the provisions of section 3932 that was all that was necessary to make the offense complete. Beside, witness Bridges testified · that defendant was engaged in both actual and future grain business. (4) The intent of the defendant was a question for the jury and was properly submitted to them in instruction number 3 on the part of the state.     (5) Instruction numbered 1, on the part of the state, was proper and was not error.     The evidence of witness Price as to the

telegrams sent by defendant and his admissions, as proved, were sufficient evidence that defendant offered or pretended to buy or sell grain to J. A. Edwards & Company. Defendant's offer to buy or sell is all that is necessary under the provisions of section 3932. "When the evil intent is supplemented by the requisite act toward its commission, the offense is complete." *State v. Hayes*, 78 Mo. 307. The trial court did not determine the venue in said instruction. (6) Instruction number 3 is neither misleading nor a comment upon the evidence. "Intent, being an operation of the mind, can not be discovered or revealed in the great majority of cases, except by acts, and from acts alone, unaccompanied by a single word, guilty intent is infused into the prosecution of crimes of the highest grade." *State v. Patterson*, 116 Mo. 505. The question of intent was one for the jury on the whole case, and the court so declared.

SHERWOOD, J.—The defendant appeals to this court, having been convicted under the provisions of sections 3931 and 3932, Revised Statutes, 1889, of the crime of what is colloquially called "dealing in options," and was fined in the sum of $300.

The appeal to this court, as the offense charged is only a misdemeanor, proceeds on the theory that those sections are unconstitutional.

Those sections are as follows:

"Sec. 3931. *Option dealing prohibited—Punishment for.*—All purchases and sales or pretended purchases and sales, or contracts and agreements for the purchase and sale, of the shares of stocks or bonds of any corporation, or petroleum, provisions, cotton, grain or agricultural products whatever, either on margin or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the

property so sold, and all the buying or selling or pretended buying or selling of such property on margins or on optional delivery, when the party selling the same or offering to sell the same, does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, or when the party buying any of such property or offering to buy the same does not intend actually to receive the full amount of the same if purchased, are hereby declared to be gambling and unlawful, and the same are hereby prohibited. Any company, copartnership or corporation, or member, officer or agent thereof, or any person found guilty of a violation of the provisions of this section, shall be fined in a sum not less than three hundred dollars nor more than three thousand dollars.

"Sec. 3932. *What necessary to constitute offense.* It shall not be necessary, in order to commit the offense defined in the preceding section, that both the buyer and seller shall agree to do any of the acts above prohibited, but the said offense shall be complete against any corporation, association, copartnership or person thus pretending or offering to sell, or thus pretending or offering to buy, whether the offer to sell or buy is accepted or not; and any corporation, association, copartnership or person, or agent thereof, who shall communicate, receive, exhibit or display in any manner any such offer to buy or sell, or any statements or quotations of the prices of any such property, with a view to any such transaction as aforesaid, shall, for each such offense, be deemed and held to be an accessory thereto, and, upon conviction thereof, shall be fined the same as the principal; and any such corporation, association, copartnership, or person, or agent permitting any such communication, reception, exhibit or display shall, for every such offense, be fined a sum

not less than three hundred dollars nor more than two thousand dollars."

The indictment contains several counts, the substance and effect of which will be here inserted:

The first count charges: That F. A. Gritzner, on the tenth day of July, 1894, at the county of Saline, in the state of Missouri, did unlawfully contract and agree with J. A. Edwards & Company for the sale of ten thousand bushels of grain, to wit: Five thousand bushels of wheat, and five thousand bushels of corn, to be delivered by the said F. A. Gritzner to the said J. A. Edwards & Company, at Chicago, Illinois, on the tenth day of December, 1894, at and for the price and sum of fifty-five cents per bushel for said wheat and forty cents per bushel for said corn, and that by said contract, and sale, the said F. A. Gritzner then and there unlawfully agreed to sell to said J. A. Edwards & Company said five thousand bushels of wheat, and said five thousand bushels of corn, at and for the price and sum of fifty-five cents per bushel for said wheat, and at and for the price and sum of forty cents per bushel for said corn, to be delivered at Chicago, Illinois, on the tenth day of December, 1894, as aforesaid, without any intention on the part of the said F. A. Gritzner to deliver said wheat and said corn at said time and place, or to receive the said purchase price therefor, and that the sale and purchase and delivery of actual wheat and corn, or of any wheat and corn was never contemplated by either the said F. A. Gritzner or said J. A. Edwards & Company, but it was understood then and there between them that settlement should be made on the said tenth day of December, 1894, by one party paying to the other the difference between the said contract price of fifty-five cents per bushel for said wheat, and forty cents per bushel for said corn, and the market price of said

wheat and said corn at the said time and place of delivery according to the fluctuations and conditions of the market at that time, and that if the market price of said wheat and said corn at that time and place should exceed fifty-five cents per bushel for said wheat and forty cents per bushel for said corn, the said F. A. Gritzner, by said contract of sale, unlawfully agreed to pay to said J. A. Edwards & Company the excess, and if the market price of said wheat should be less than fifty-five cents per bushel, and the market price of said corn should be less than forty cents per bushel at said time and place of delivery, the said J. A. Edwards & Company, by said contract, unlawfully agreed to pay to said F. A. Gritzner a sum of money equal to the difference between the market price of said wheat and said fifty-five cents per bushel and a sum equal to the difference between the market price of said corn and said forty cents per bushel; against the peace and dignity of the state.

The second count charges in shorter terms an absolute sale of wheat, etc., by defendant to Edwards & Company, of Chicago, to be delivered at the option of defendant to Edwards & Company, without intention on his part to have the full amount of the wheat, etc., on hand, or to deliver the same on, etc., to Edwards & Company, at Chicago, Illinois, etc., and that Edwards & Company did not intend to receive same at the time of making the contract.

The third count charges that defendant did unlawfully contract and agree with Edwards & Company to purchase of them ten thousand bushels of grain, etc., to be delivered by Edwards & Company to defendant at Chicago, Illinois, on the tenth of December, 1894, without any intention on the part of the defendant to receive said grain or to pay the purchase price there-

for, etc. Then follow allegations similar to those in the first count.

The fourth count charges defendant with having bought ten thousand bushels of grain, of whom is not stated, to be delivered at the option of Edwards & Company, at Chicago, Illinois, on the eleventh of December, 1894, and that defendant did not intend to receive, etc., nor did Edwards & Company intend to have said grain on hand, etc.

The evidence disclosed by the record is in substance the following: That in July, 1894, certain messages were occasionally wired by defendant, then at Slater, Saline county, Missouri, to J. A. Edwards & Company (among others), at Chicago, Illinois, of the following purport and effect: "Buy five wheat," or "buy five corn." Whether the month was mentioned in these messages, the witness who was the telegraph operator, did not know. And neither did the witness *know* what the expressions "five wheat," or "five corn," meant. He would not say farther than this: "I *suppose* it means five thousand;" "five thousand, as I understand it, five thousand bushels." This witness also stated that defendant was in the grain business; he shipped some grain, and was also in the general merchandise business; but did not know of any elevator where he kept grain stored. This witness also stated that Edwards & Company was a commission firm in Chicago. Nor did the telegram say for whom the grain was to be bought.

The next witness stated defendant had spoken about buying or selling some wheat or corn; that defendant would say he had bought five or ten of wheat or corn, and, against the objection of defendant, as with the previous witness, was allowed to state what he "*understood*" five or ten of wheat or corn to mean, by answering: "My *understanding* of that was

five or ten thousand bushels of wheat or corn, as the case might be;" "that is my understanding of what it means (among dealers)—they mean five or ten thousand bushels, so far as I have any knowledge on the subject;" "I don't know whether anybody else would put a different construction on the subject or not." These conversations, as this witness stated, were had with defendant in reference to Edwards & Company, of Chicago.

The next witness stated, in response to a question suggesting the answer, that in 1894 he *thought* that defendant was engaged in transactions involving the purchase of both cash and future grain. This witness, against defendant's objection, was permitted to state about conversations regarding the purchase from, or selling grain to, other persons than Edwards & Company.

In regard to the amounts defendant spoke of buying or selling, witness said: "Five or ten thousand bushels would be the best of my recollection;" and that he did not remember that defendant told him who the parties were that he bought from or sold to. This witness also states that "Future transactions are bought and sold on margins, whatever amount of margin is required to protect the deal to buy or sell;" and that margins meant "two or three or four or five cents a bushel." Asked what meant by the words five or ten, said it depended upon what scale the parties were dealing; it might mean five hundred, five thousand, or five million, and that he *understood* defendant to mean five thousand, and that he *supposed* he got that from defendant's conversation.

It seems hardly necessary to say that such evidence as the foregoing, to dignify it by that title, is wholly insufficient on which to base a conviction.

In regard to *letters* it has long been settled law

that a letter properly addressed, post paid, and deposited in the mail, is presumed, *prima facie*, to reach its destination, such destination being the residence or place of business of the party thus addressed, for this is the usual course and order of business in that department of the public service. 1 Greenl. Evid., sec. 40.

And the like rule has been held to apply, for like reasons, in similar circumstances, to telegrams. *Com. v. Jeffries*, 7 Allen, *loc. cit.* 563; *U. S. v. Babcock*, 3 Dill. 571.

In the latter case, however, the telegrams were properly addressed to Babcock by name, care of the executive mansion, Washington, D. C., and were only admitted in evidence on proof that they were *received by the telegraph company* in Washington, and delivered to the doorkeepers at the executive mansion, it being shown that the defendant had an office therein as the private secretary of the president, and that the usage of the doorkeepers was to deliver such messages to the persons to whom they were addressed, or place them on their desks. These circumstances being regarded sufficient to dispense with direct proof of the actual delivery to the defendant of the telegrams, or of their actual receipt by him.

This latter ruling we can not but regard as exhibiting far more of that wise conservatism which should ever attend the administration of the criminal law, which refuses to convict on *preponderating probabilities*. *Ogletree v. State*, 28 Ala. 693; 3 Greenleaf on Evidence [14 Ed.], sec. 29; Am. Lead. Cas. 659; *State v. Newman*, 7 Ala. 69.

Ruling thus, it must be held, inasmuch as there is no evidence showing receipt of the telegrams by the telegraph company in Chicago, nor other evidence of similar probative force to that in *Babcock's* case, that,

looking at the matter from any point of view, an important and essential link is absent from the chain of inculpatory evidence in this case.

But taking it for granted that the telegrams were admissible, it is not seen how this concession can affect defendant, because, for aught that appears to the contrary, these telegrams were entirely within the lines of legitimate business and lawful transactions. And this, because defendant was engaged in the grain business, and it will be presumed that those telegrams were respecting lawful business matters and grain affairs. 1 Greenleaf on Evidence [14 Ed.], sec. 34. It has been frequently ruled in this state, in a *civil* action, that where a transaction on its face is as consistent with honesty as with fraud, that the finding of the court ought to be in favor of the former view and against the latter. *Dallam v. Renshaw*, 26 Mo. 533; *Chapman v. McIlwrath*, 77 Mo. 38; *Webb v. Darby*, 94 Mo. 621; *Page v. Dixon*, 59 Mo. 43; *Rumbolds v. Parr*, 51 Mo. 592. If this is the case in mere *civil* actions, certainly a more rigorous rule should not prevail in *criminal prosecutions*.

Besides, the language of the witnesses is that they *"understood"* so and so. Such *understandings* are not allowed to pass for evidence even in civil cases. *Phares v. Barber*, 61 Ill. 271; see, also, *State v. Miller*, 44 Mo. App. 159. And this is so *a fortiori* in criminal cases. Similar observations apply touching the probative inefficacy of testimony as to what the witnesses *"supposed."* Suppositions and understandings have not hitherto been accounted a sufficient basis for a verdict of guilty.

For these reasons defendant's instruction in the nature of a demurrer to the evidence was improperly refused.

Other considerations touching the insufficiency of

the evidence tend to the same conclusion as the one previously announced. The instructions are all based, and correctly based, on the theory that the offense charged was committed in *Saline* county, where the indictment was found. This theory is in conformity, not only with the statute now being canvassed, but with the theory generally prevalent.

"As, under the unwritten rule, and in the absence of special circumstances, the laws of a state are for the government only of persons and things within it, statutes in mere general terms will be construed as not intended to create offenses, or otherwise regulate the conduct of persons, beyond its territorial limits. Even where legislation in one country may properly bind its citizens in another, express words are required, or distinct implication, to give it this effect." Bishop, Stat. Crim., sec. 141, and cases cited. To the same effect see 1 Bishop, N. Crim. L., secs. 109 and 110; Cooley's Const. Lim. [6 Ed.] 149.

It seems quite apparent, from the language of the statute, that there is no intimation therein contained that it was intended to operate extra-territorially (even granting such power in the legislature thus to make it operative). Indeed, it appears very obvious from section 3933 that the offense cognizable by it and its associate sections is one perpetrated alone and punishable alone within our borders.

Furthermore, the offense, if one was committed, was committed alone within the jurisdiction of the sovereignty of the state of *Illinois*. One state can not, speaking generally, "provide for the punishment, as crimes, of acts committed beyond the state boundary, because such acts, if offenses at all, must be offenses against the sovereignty within whose limits they have been done." Cooley's Const. Lim., *supra*.

Now, no offense certainly was committed until

and unless communication was established between the mind of defendant and the brokers in Chicago, to wit, when the telegram reached *that* point, because, until that juncture, no offer to buy or to sell or otherwise agree could have been made.

In a word, the case stands here, conceding the reception of the telegrams, as if defendant in Slater had *spoken* to his brokers in Chicago over a long distance *telephone*, when of course but one opinion could be entertained as to the *locus* where the offer was made, and consequently the crime committed. And it has been ruled in this state, as well as elsewhere, that a person can not be punished in this state where the offense was actually consummated in another state, even though some act constituting a part of the offense, or making the offense possible, was committed within this state. *State v. Shaeffer*, 89 Mo. 271; Works, Courts & Jurisdict. 470, and cases cited.

Moreover, as criminal and penal statutes are to be strictly construed, construed *stricti*, if not *strictissimi, juris;* as no one is to be made subject to such statutes by *implication* (*State v. Bryant*, 90 Mo. *loc. cit.* 537, and cases cited; Bishop, Stat. Crim., secs. 190, 193, 194, 227); as they are *nonelastic*, as only such transactions are covered by them as are within both their spirit and letter (*State v. Schuchmann*, 133 Mo. 111), as the statute in question *does not make it punishable* for a citizen of this state *to communicate with a citizen of and in another state with a view to deal in options*, it stands to reason as well as to authority that no such offense as that just mentioned is by the statute created, the rule being that where a statute defining an offense designates one or more classes of persons as subject to its pains and penalties, all others not thus mentioned are to be deemed excluded from the prescribed punishment. *Howell v. Stewart*, 54 Mo. 400.

Now in regard to the constitutionality of the statute before us.

We are not of opinion that it violates section 53, article 4, of the constitution, which prohibits the passage of a special law in certain cases therein enumerated. That it is not special is shown by the cases of *State ex rel. v. Tolle*, 71 Mo. 650; *State ex rel. v. Herrmann*, 75 Mo. 340, since under the rule laid down in those cases it relates to persons or things *as* a class, not to particular persons or things *of* a class.

Nor can it be regarded as a special law because of attempting "to legislate against the trading and dealing in certain articles of personal property."

A similar objection was unsuccessfully urged against the double damage act in *Hume's* case, 82 Mo. 221, the claim being that it was special "because it was directed against railroads alone, while no other common carriers were brought within its operation."

Now, if this law is not a special law, as pointed out in the cases already cited, then clearly that other provision of the constitution prohibiting the passage of a special law when a general law could be made applicable, and making that a judicial question, etc., can have no place in this discussion. The constitution was intended to be a practical instrument, one for every day's use, and not one which would hamper legislation at every turn, and restrict it in every enactment.

The statute at bar embraces within its scope all such articles as *ordinarily* are employed in "dealing in options," and this is sufficient. It need not in order to its constitutional validity, "embrace all kinds of personal property," whether such kinds of personal property were usually the subjects of option dealing or not. Had it attempted such a comprehensive, world-encircling task, it might possibly have run counter to another section of the constitution (sec. 28, art. 4),

State v. Gritzner.

requiring that a bill contain but one subject, to be clearly expressed in its title. The objection now put forward in the form of the assertion that a general law could be made applicable in this case, would, if carried to its logical extreme, invalidate the statute for licensing druggists, because, forsooth, the act does not include a provision for licensing dramshop-keepers, merchants, peddlers, and auctioneers.

But it is needless to multiply examples by way of illustration; our Revised Statutes abound with them.

The object of the constitutional provisions under review would seem to be, *first*, to prevent the passage of a special law, that is, a law which does not deal with what might be termed natural classes of persons or things, but which splits a natural class in twain, and forms therefrom two or more artificial or arbitrary classes, thus making what, in *Wheeler v. Philadelphia*, 77 Pa. St. 338, is aptly termed "*classification run mad.*" Of this sort was the statute in *Granneman's* case, 132 Mo. 326, which took from a large class of laborers a single kind, to wit, barbers, and forbade them only to work on Sunday.

*Second*, the object of the other provisions already adverted to, would seem to be, if it be given, what a familiar rule imperatively demands, a reasonable construction, to compel the passage of a general law, *not* where human ingenuity might by some possibility frame a law covering a variety of congruous subjects, but where alone such a law can reasonably, and without needless and serious embarrassment or legislative complications, arising from a diversity of objects, be passed. If this is not what the constitutional provision means, then the contemporaneous, as well as the continuous, construction given it for the last twenty years, is wrong and a large percentage of our statutes is obnoxious to constitutional objections.

VOL. 134 mo—34

The other point that the statute is violative of that provision of the constitution which commands that "no person shall be deprived of life, liberty, or property, without due process of law" (sec. 30, art. 2), may be very briefly disposed of by saying: While that section secures the undoubted liberty to *contract* in a *lawful* way, yet that this does not include nor grant a license to *gamble*.

For the foregoing reasons, and because of an entire failure to establish the guilt of defendant, the judgment is reversed and he discharged. All concur.