New York Central Railroad Company, Plaintiff in Error, v. Lehigh Stone Company, Defendant in Error.

## Gen. No. 6,866.

1. COMMERCE, § 4*—*when shipment interstate.* A shipment between intrastate termini passing into another State en route is an interstate shipment and is governed by the law pertaining to interstate shipments.

2. CARRIERS, § 30*—*terms of contract as fixed by law.* Under the Interstate Commerce Act of 1887 and amendments thereto, the terms of the contract between consignor and carrier as to interstate shipments are fixed by law and the liability cannot be changed by contract.

3. CARRIERS, § 201*—*who is primarily liable for transportation charges.* Where goods are delivered to a common carrier for interstate shipment, the consignor is primarily liable for the lawful transportation charges.

4. CARRIERS, § 201*—*nature of consignor's liability for transportation charges.* When goods are delivered to and accepted by a carrier for interstate shipment, the status of the consignor and carrier is fixed as debtor and creditor, and the right of the carrier to recover transportation charges does not depend upon delivery to the consignee, and such status cannot be waived by the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

carrier nor can the carrier be estopped from enforcing the consignor's liability.

5. EVIDENCE, § 34*—*presumption that a condition or status continues.* Where a certain status or condition is once shown to exist, it is presumed to continue until the contrary is shown, unless change would occur in the natural course of events.

6. CARRIERS, § 211*—*presumption as to consignor's liability.* Where a consignor delivered a car of freight for interstate shipment which was accepted by the carrier, the consignor became primarily liable for transportation charges, and in the absence of evidence to the contrary such liability is presumed to continue and the carrier is entitled to recover.

7. EVIDENCE—*presumption from common experience.* It is a rule of evidence that that which according to the common experience of mankind usually happens in the regular and usual course of business is presumed to have happened in any given case until the contrary appears from the evidence.

8. CARRIERS, § 77*—*presumption of delivery.* Where a car of stone was delivered to a carrier for interstate shipment and accepted by the carrier, it will be presumed that it reached the consignee in due course, and this presumption is strengthened where it appeared that the stone was thereafter paid for by the consignee, and in letters by such consignee to the consignor's agent, relative to freight charges, no claim was made that the stone was not delivered.

Error to the Circuit Court of Kankakee county; the Hon. ARTHUR W. DE SELM, Judge, presiding. Heard in this court at the October term, 1920. Reversed with finding of facts. Opinion filed March 17, 1921. Rehearing denied May 3, 1921.

W. R. HUNTER and A. J. POWELL, for plaintiff in error; BERTRAND WALKER, of counsel.

WERNER W. SCHROEDER, for defendant in error.

MR. JUSTICE HEARD delivered the opinion of the court.

Plaintiff in error, hereinafter called plaintiff, a railroad corporation engaged in interstate commerce on October 16, 1914, received at Lehigh, Illinois, from defendant in error, hereinafter called defendant, a carload of stone consigned to C. L. Weger Company,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

at Flat Rock, Illinois, for shipment from Lehigh to Schneider, Indiana, and thence to Danville, Illinois, over plaintiff's tracks, where it was to be transferred to the Big Four, and thence over the Big Four tracks to Flat Rock, Illinois. A bill of lading for the car was issued but the freight charges amounting to $20.98 were not paid. September 12, 1919, suit was brought before a justice of the peace by plaintiff against defendant to recover these freight charges. The case was tried in the circuit court, on appeal from the judgment of the justice court, before the court without a jury. The trial resulted in a judgment in bar in favor of defendant against plaintiff.

The shipment in question was an interstate shipment and this case must be determined according to the law pertaining to such shipments. Under the Interstate Commerce Act of 1887, and the amendments thereto, when goods are delivered to a common carrier by a consignor to be shipped by interstate commerce to a consignee, by freight, the terms of the contract between the consignor and the carrier with reference to the freight charges differ from other contracts. The parties themselves do not fix the terms of the contract, but those terms are fixed by law. Even if the consignor and carrier should agree upon terms differing from those imposed by the Interstate Commerce Act, their contract could not prevail to change the consignor's liability. *Central of Georgia Ry. Co. v. Birmingham Sand & Brick Co.,* 9 Ala. App. 419; 10 Corpus Juris 445.

When goods are delivered by a consignor to a common carrier for interstate shipment and by the carrier received for such shipment, under all the authorities the consignor is primarily liable for the lawful transportation charges. *New York Cent. Ry. Co. v. Philadelphia & R. Coal & Iron Co.,* 286 Ill. 267.

Delivery of the freight to the consignee is not a condition precedent to the consignor's liability for

566 · Appellate Courts of Illinois.

N. Y. Central Railroad Co. v. Lehigh Stone Co., 220 Ill. App. 563.

the freight charges, but when the goods are delivered to the common carrier for interstate shipment and accepted by such carrier for such shipment, the status of the consignor and the carrier is, at that instant, fixed as debtor and creditor as to the freight charges, and the common carrier has the right to demand prepayment of such charges. *Indianapolis & St. L. Ry. Co. v. Herndon,* 81 Ill. 143; *Lehigh Val. Transp. Co. v. Post Sugar Co.,* 228 Ill. 121. This status cannot be waived by the carrier and no laches or act of the carrier can estop it from enforcing the consignor's liability. *New York Cent. Ry. Co. v. Philadelphia & R. Coal & Iron Co., supra.*

Where a certain status or condition is once shown by the evidence to exist, such status or condition is presumed to continue until the contrary is shown by the evidence, unless in the natural course of events a change in such status or condition would occur. *Langdon v. People,* 133 Ill. 382; *Weidlich v. New York, N. H. & H. R. Co.,* 93 Conn. 438, 106 Atl. 323; *Dougherty v. French,* 185 Iowa 975, 170 N. W. 767; *Kuehne v. Malach,* 286 Ill. 120.

When defendant delivered the car of stone in question to plaintiff for interstate shipment and the car was accepted by plaintiff for such shipment, defendant became primarily liable to pay the freight charges and the status of the parties as debtor and creditor was thereby fixed, and there being no evidence to the contrary the presumption is that such status continued until the time of the trial and the court should have found in favor of plaintiff in error.

It is not necessary, however, to rest our decision of this case on this point. We are of the opinion that there is sufficient undisputed evidence in the case to require a finding that the car of stone was in fact delivered by the carrier to the consignee, although no witness has testified to such delivery or to its nondelivery.

It is a rule of evidence that that which according to the common experience of mankind usually happens in the regular and usual course of business is presumed to have happened in any given case until the contrary appears from the evidence. In *Commonwealth v. Jeffries*, 7 Allen (Mass.) 548, it was said:

"No rule of evidence is better settled or more clearly founded in good sense and sound policy than that which authorizes presumptions or inferences of fact to be deduced from the proof of certain other facts, which, according to the common experience of mankind, or the usual course of business, naturally or necessarily lead to the result or conclusion which is sought to be drawn from them. Such presumptions generating a belief or conviction in the mind as derived from those connections which are shown by experience, irrespective of any legal relation. The process of ascertaining one fact from the existence of another is essential to the investigation of truth, and prevails in courts of law as well as in the ordinary affairs of life, especially in cases where there is a well-known and established usage or course of business and primary evidence of the existence of a fact is wanting or difficult to be obtained."

Applying this rule of evidence it has been frequently held that letters would be presumed to have been delivered from evidence of their having been deposited in the mail properly stamped and addressed; that telegrams properly addressed would be presumed to have been received from the fact of their delivery to a telegraph company for transmission, and that goods delivered to an express company and properly marked for consignment would be presumed to have been delivered to the consignee. *State v. Gritzner*, 134 Mo. 512, 36 S. W. 39; *Western Twine Co. v. Wright*, 11 S. D. 521, 78 N. W. 942; 1 Greenleaf on Evidence 40; *Plano Mfg. Co. v. Parmenter*, 39 Ill.

App. 270; *Ashley Wire Co. v. Illinois Steel Co.,* 164 Ill. 149; *Meyer v. Krohn,* 114 Ill. 574.

In applying this rule in *Oregon Steamship Co. v. Otis,* 100 N. Y. 446, 3 N. E. 485, the Supreme Court of New York said: "The presumption indulged is one of fact and so open to rebuttal and contradiction and consists merely in the natural inference which may be drawn from the experienced certainty of transmission. The great bulk of letters sent by mail reach their destination, and equally so the great bulk of telegrams. A failure in either case is an exception; possible, but rare. The letters are transported by government officials, acting under oath and upon a system framed to secure regularly and precision, the telegrams, by private corporations, whose success and prosperity depend largely upon the promptness and accuracy of the work, and are faithful under the incentive of interest."

In *Perry v. German-American Bank,* 53 Neb. 89, 73 N. W. 538, it was held that such presumption results naturally if not necessarily from the relation of telegraph companies to the public, which is held to be that of public carriers of intelligence with rights and duties analogous to those of carriers of goods.

In *State v. Bank of Neosho,* 120 Mo. 161, 25 S. W. 372, it was said: "Every one, as well a private person as an official, is presumed to perform his engagements and his duty."

In *McCallister v. Ross,* 155 Mo. 87, 55 S. W. 1027, it was said: "It also presumes that every one, even though not an official performs his engagements and duties social as well as business."

The rights and duties of a railroad company, engaged in interstate commerce, to the public, are fixed by law and its business of carrying freight is carried on under strict rules and regulations prescribed by the Interstate Commerce Commission. In the natural and ordinary course of business, freight delivered to

a railroad company for interstate shipment is delivered to its consignee. The great bulk of such freight reaches its destination. From the regularity of the course of business there is no reason why delivery to the consignee of an interstate shipment should not be presumed from its delivery, for such shipment, to the common carrier, by the consignor.

In the present case the evidence shows that the car of stone was delivered by the consignor to the plaintiff for interstate shipment to the consignee and that it started on its way. In the usual and ordinary course of plaintiff's business as a common carrier the car would arrive at its destination and be received by the consignee and the presumption of fact therefore is that this car did so arrive and was so delivered, and in the absence of evidence to the contrary such presumption must control. This presumption is aided by the fact that the stone was paid for by the consignee November 10, 1914, and that in three letters written by the secretary and treasurer of defendant under dates of March 13, 1917, April 19, 1917, and September 19, 1917, to the agent of plaintiff, in regard to this claim for freight charges, no claim is made that the car of stone had not been delivered to the consignee, but the only reason assigned why the charges should not be paid was that in defendant's settlement with the consignee for the stone, the freight charges were deducted and allowed to the consignee as a credit.

We are of the opinion that under the evidence in this case plaintiff was entitled to a judgment against defendant for $20.98 damages and costs and, as there is no dispute in the evidence, the judgment of the court below will be reversed and judgment for $20.98 damages and costs of suit will be entered in this court for plaintiff against defendant.

*Reversed with finding of facts.*

Finding of facts. We find that defendant in error delivered to plaintiff in error, a common carrier, a car of stone for interstate shipment and that the same was received by plaintiff in error for such shipment and by plaintiff in error delivered to the consignee thereof, and that the freight charges thereon were $20.98, and that such charges have not been paid.