JOHN MEYER *et al.*

*v.*

MOSES KROHN *et al.*

*Filed at Springfield September 23, 1885.*

1. PARTNERSHIP—*interest in profits—whether a partnership.* A person may contract with a particular member of a firm for an interest in his share of the profits, without making himself a member of such firm and liable for its debts.

2. SAME—*dissolution—of the notice required, to protect retiring partner.* As to persons who have never had any business transactions with a partnership firm, notice by publication in a newspaper published at the place of business of the firm, of its dissolution or the withdrawal of a member, is sufficient; but as to those who have had previous dealings with it, actual notice or its equivalent must be shown, to protect the retiring member from liability for debts subsequently incurred in the firm name.

3. SAME—*notice of dissolution by mail—presumption.* Proof of the mailing of notices of the dissolution of a partnership and of the retirement of certain members thereof, properly addressed to persons having had prior dealings with the firm, is *prima facie* evidence that the notices have been received by the parties to whom they were addressed; but such presumption may be rebutted by proof that they were not received.

4. Pleading—*effect of a traverse, as properly denying the allegations in a prior pleading, or, as amounting to an admission.* In an action against several as partners, where the plaintiff's replication to a plea denying the joint liability of one of the defendants as a partner, alleging that for two years prior to the contracting of the indebtedness sued on, such defendant was a partner, during which time plaintiff dealt with such firm and gave it credit, and that at the time the debt sued on was contracted in the firm name, the plaintiff had no notice that such defendant had ceased to be a member of the firm, a rejoinder traversing the allegations of the replication is good. But if the replication further alleges that at the time of contracting the debt sued on, the defendant so claiming to have retired from the firm, and one of his co-defendants, constituted one firm, and that such firm sued was composed of his firm and two others sued, the rejoinder will be bad, as admitting his joint liability.

5. And where a replication to such a plea alleges that up to a day named the defendants were partners, and as such had dealings with the plaintiff, and that after that date he, without notice of the withdrawal of such defendants from the firm, gave the firm credit, and the defendants rejoin that at the time of making the promises they had ceased to be such partners, of which fact the plaintiff had notice, etc., this will, so far as the issue on such rejoinder is concerned, constitute an admission of record of the existence of the partnership up to the day and date named in the replication.

6. Evidence—*question assuming the existence of particular facts.* On an issue as to the joint liability of two defendants as partners, one of them testified quite fully as to their withdrawal from the firm, and to the fact of having given the plaintiff both general and special notice of such withdrawal before the credit was given to the partners left after such withdrawal, who continued the firm name, and he was then asked what other steps he took to notify the parties with whom the old firm had been dealing, of the dissolution of the firm: *Held,* that the question was objectionable, as assuming that some other steps than those mentioned had been taken.

7. Presumption *to sustain a judgment.* On an issue of fact as to the giving of notice of the dissolution of a firm, where the evidence of the defendants show the mailing of such notice to the plaintiff, properly addressed, and that of the plaintiff that it never was received, and the jury find for the plaintiff, it will be presumed in favor of the judgment below that the jury found, as matter of fact, that such notice was never received.

8. Error—*what may be assigned as error.* A party can not assign for error the exclusion of evidence offered by him, which, if admitted, would establish the issue in favor of his adversary.

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. John H. Williams, Judge, presiding.

This was an action of assumpsit, brought by Moses Krohn and Leopold Feiss, partners, under the firm name of Krohn, Feiss & Co., against John Meyer and Moses Bachrach, together with Solomon Hoffheimer and Eva Hoffheimer, as partners, doing business at Galesburg, Illinois, under the firm name of Hoffheimer & Co.

The declaration contains six special counts on as many bills of exchange accepted by Hoffheimer & Co., and also the common counts. The first of these bills was dated August 12, 1879, and the last November 10, 1879. Appellees, subsequent to August 12, 1879, sold merchandise to Hoffheimer & Co. John Meyer pleaded in abatement, denying the defendants' partnership as alleged, and averring that the several promises in the declaration mentioned, if made, were made by Solomon and Eva Hoffheimer, under the firm name of Hoffheimer & Co., and not by himself and his co-defendants, as alleged. Bachrach filed a separate plea precisely the same as that of Meyer. To each of these pleas the plaintiffs filed replications, as follows:

*First*—A traverse of the allegations of said pleas, concluding to the country, upon which issue was joined.

*Second*—A special replication that before the making of the promises in the declaration mentioned, on, to-wit, the 1st day of January, 1878, and for two years prior thereto, the defendant John Meyer was a partner in business with his co-defendants, under the firm name of Hoffheimer & Co., and that at divers times during the said two years, the plaintiffs, together with one Louis Krohn, who was then, but before the making of the said promises ceased to be, a partner in business with the plaintiffs, under the firm name of Krohn, Feiss & Co., sold goods and extended credit to the said John Meyer and his co-defendants, under the firm name of Hoffheimer & Co., and further averring that at the time of the making of the said promises the plaintiffs had had no notice that the said John Meyer had ceased to be a partner with his co-

defendants, under the firm name of Hoffheimer & Co., concluding with a verification.

To these two special replications each of the defendants filed two rejoinders:

*First*—The first denying that on the said 1st day of January, 1878, he was, or ever had been, a partner of his co-defendants, under the firm name of Hoffheimer & Co., but averring that at the said time, to-wit, January 1, 1878, he and his co-defendant, John Meyer, were partners, under the firm name of John Meyer & Co., and that the said firm of Hoffheimer & Co. was composed of the said Solomon Hoffheimer and Eva Hoffheimer and the said firm of John Meyer & Co., and not of the said Moses Bachrach and his co-defendants, as alleged in the replication, concluding with prayer of judgment, and that the writ and declaration be quashed.

*Second*—The second averring that at the time of the making of the promises in the declaration mentioned, he had ceased to be a partner in business with his co-defendants, under the firm name of Hoffheimer & Co., of which the plaintiffs before the making of the said promises did have notice, concluding to the country, upon which issue was taken.

To the first rejoinders of both John Meyer and Moses Bachrach, the plaintiffs demurred specially, which demurrer was sustained, and defendants abided their rejoinders.

Mr. WILLIAM W. BERRY, and Messrs. DAVIS & POLING, for the appellants:

The rule of law, if not already so, should be, that the notice of the dissolution addressed and mailed, postage prepaid, to correspondents at a distance, should suffice to discharge the retiring members of a firm from liability for debts thereafter incurred. This rule is not restricted to notice of the dishonor of negotiable paper. *Dunlap* v. *Higgins,* 1 H. L. Cases, 381; *Harris case,* 20 W. R. 690; *Jenkins* v. *Blizzard,* 1 Starkie, 418.

Where a partner retires from a firm, notice is usually given by public advertisement, or by letters to the customers of the firm, or both. (Parsons on Contracts, 169.) To require more would be unreasonable, if not impracticable.

But the rule as to actual notice has no application, for the reason that appellees never had any dealings with Hoffheimer & Co. prior to the dissolution of that firm in January, 1878. Louis Krohn, together with appellees, constituted the firm of Krohn, Feiss & Co. at that date. A year thereafter, and six months before the creation of the present indebtedness, Louis Krohn retired from the firm, and by this act the old firm of Krohn, Feiss & Co. was dissolved. Parsons on Partnership, 415; Story on Partnership, secs. 269, 272; 3 Kent, 53; *Bank of Mobile* v. *Andrews*, 2 Sneed, 535; *Mudd* v. *Bart*, 34 Mo. 465.

In the second replication it was averred that appellants had been partners, etc. In the first rejoinder thereto this was denied, and the averment made that at the time stated in the replication, John Meyer & Co., of which firm appellants were members, were partners with the Hoffheimers, under the name of Hoffheimer & Co., and the rejoinder was sworn to. It was, in everything save the name, a plea in abatement. The statement in it was literally true, as the articles of co-partnership of Hoffheimer & Co. were between the Hoffheimers and John Meyer & Co. The court erred in sustaining the demurrer to this rejoinder.

The court erred in disallowing the question, "State what other steps you took to notify the parties with whom the firm of Hoffheimer & Co. had been dealing, of the dissolution of the firm." This ruling precluded the defendant from making all the defence that was legitimate.

The partnership articles between the Hoffheimers and John Meyer & Co. should have been admitted to show by what authority the signature of John Meyer & Co. was attached to the contract of dissolution.

The court erred in refusing to admit in evidence the conversation with Gideon, an agent of the plaintiffs, as notice to him was notice to the principals. *Page* v. *Brant,* 18 Ill. 37; *Hottgrave* v. *Wintker,* 85 id. 470.

Messrs. CARTER & GOVERT, for the appellees:

The rejoinder to the second replication was bad in substance, in setting up in abatement that the firm of Hoffheimer & Co. was composed of two individuals, Solomon and Eva Hoffheimer, and another firm, John Meyer & Co., which in turn was composed of appellants.

A partnership is a combination of two or more persons. Parsons on Partnership, 6; Collyer on Partnership, sec. 3; 3 Kent's Com. 24.

As to persons having previous dealings with the firm, actual notice is necessary to relieve a retiring partner from further liability. *Whiteside* v. *Lee,* 1 Scam. 550; *Page* v. *Brant,* 18 Ill. 38; *Warren* v. *Ball,* 37 id. 76; *Hottgrave* v. *Wintker,* 85 id. 470; *Hicks* v. *Russell,* 72 id. 230; *Austin* v. *Holland,* 69 N. Y. 246; *Haynes* v. *Carter,* 12 Heisk. 7; *Rose* v. *Cofield,* 53 Md. 18; *Mitchum* v. *Bank of Kentucky,* 9 Dana, 166; *Prentiss* v. *St. Clair,* 5 Vt. 156; *Kenney* v. *Altwater,* 77 Pa. St. 34.

Mailing notice of dissolution of partnership to one who has had dealings with the partnership, would be a step in the direction of actual notice, but the question whether it was received or not is a question of fact for the jury, and not a question of law. And proof that the letter was not returned from the dead letter office, does not establish its receipt by the customer. (*Kenney* v. *Altwater,* 77 Pa. St. 34.) To make notice to an agent notice to the principal, it must be shown the agent had authority to represent the principal in such matters. (*Stewart* v. *Sonneborn,* 49 Ala. 178.) And the agent must be acting within the scope of his agency, and must relate to the business in which he is engaged. *Conger* v. *Railroad Co.* 24 Wis. 157.

· Mr. CHIEF JUSTICE MULKEY delivered the opinion of the
Court :

Moses Krohn and Leopold Feiss, wholesale merchants at
Cincinnati, Ohio, doing business as partners, under the firm
name of Krohn, Feiss & Co., brought to the June term, 1883,
of the Adams county circuit court, an action of assumpsit,
against John Meyer, Moses Bachrach, Solomon Hoffheimer
and Eva Hoffheimer, as partners, lately doing business at
Galesburg, Illinois, under the name and style of Hoffheimer
& Co.   The declaration was in the usual form, containing the
common counts and six special counts, on bills of exchange
payable to appellees, and drawn by them upon and accepted
by Hoffheimer & Co.   The bills were given at different times,
in due course of trade, for goods and merchandise sold by the
plaintiffs to the defendants.   The first of these bills bears date
August 12, 1879, and the last, November 25 of the same
year, and the whole series, interest included, together with
a small account, amounts, in the aggregate, to near $1100.
The Hoffheimers made no defence.   The appellants severally
filed pleas in abatement, denying the partnership at the time
of making the bills of exchange and the purchase of the goods
sued for.   The plaintiffs traversed these pleas, and also sev-
erally replied, in substance, that appellants, on the 1st day
of January, 1878, and for two years prior thereto, were mem-
bers of the firm of Hoffheimer & Co., during which two years
appellees had sold goods to said firm, and that at the time
of making the said bills of exchange, etc., appellees had no
notice that appellants had ceased to be members of the firm
of Hoffheimer & Co.   Appellants took issue on these replica-
tions, and also severally rejoined that they were, during the
said two years, as between themselves, partners, under the
firm name of John Meyer & Co., and that this firm and their
co-defendants composed the firm of Hoffheimer & Co., and
that the appellants were not otherwise members of the latter

firm. The court sustained demurrers to these rejoinders, and the appellants stood by them. By a second rejoinder the appellants severally alleged that at the time of the making of the alleged promises sued on, the appellees did have notice of the withdrawal of the appellants from the firm of Hoffheimer & Co., concluding to the country. The cause was then tried upon the issues formed as above stated, resulting in a verdict and judgment in favor of plaintiffs, for $1093.21. On appeal to the Appellate Court for the Third District this judgment was affirmed, and the present appeal brings before us for review the judgment of the latter court.

The first point made by appellants questions the correctness of the ruling of the trial court in sustaining a demurrer to appellants' rejoinder to appellees' second replication. We have no doubt of the soundness of the ruling of the court on that question. Had the rejoinder concluded with the denial contained in it of the averment in the replication, to the effect that appellants had been members of the firm of Hoffheimer & Co., it would have been good as a mere traverse of the replication. But the effect of this denial, considered as a mere traverse, is entirely neutralized by the additional allegation "that the said firm of Hoffheimer & Co. was composed of the said Solomon Hoffheimer and Eva Hoffheimer, *and the said firm of John Meyer & Co.*" Now, as the firm of John Meyer & Co. could have no existence outside of the appellants, who composed it, the conclusion is manifest that they were also members of the firm of Hoffheimer & Co.,—so that in truth the rejoinder, instead of presenting any defence to the matter set up in the replication which it assumed to answer, was and is, when taken as a whole, a substantial admission of the facts therein stated. In thus holding, we at the same time recognize the right of a third party to contract with a particular member of a firm for an interest in his share of the profits without making himself a member of the firm. Thus, if A and B are partners, C may purchase an interest

in A's share of the profits without making C a partner with A and B. But the rejoinder in question presents no such case as this. As indicated by the pleadings, and as the evidence tends to show, appellants were members of the firm of Hoffheimer & Co. prior to the 2d of January, 1878, and, as such members of the firm, were customers of appellees. On that day appellants withdrew from the firm, but the business continued to be carried on by the Hoffheimers just as it had been before, and as claimed by appellees, without any notice of appellants' retirement from the firm. Whether appellees had such notice or not, was put directly in issue by the pleadings, and this was the controlling question in the case. The question of fact thus put in issue has been decided adversely to appellants, and this court is not permitted to review it.

Appellant Bachrach, when upon the stand as a witness, after having testified very fully as to his and Meyer's withdrawal from the firm, and to the fact of having given to appellees both general and special notice of such withdrawal, was asked this additional question: "State what other steps you took to notify the parties with whom the firm of Hoffheimer & Co. had been dealing, of the dissolution of the firm," —which the court, on objection, held improper, and this is assigned for error. The question was clearly objectionable, on the ground it assumed that some other steps than those mentioned had been taken. But waiving this objection, it is clear the appellants could not have been injured by the ruling of the court in this respect, for, as just stated, the witness had already fully set forth, with great particularity, the fact of notice, and the different ways in which it had been given. Moreover, the same question, differing somewhat in form, was subsequently put to and answered by the witness.

It is also objected the court erred in refusing to permit the articles of co-partnership to be read in evidence to the jury. Had they been offered by appellees, we are of opinion they would have been competent evidence under their first repli-

cation, which simply put in issue the pleas of the defendants denying the partnership. But how the appellants could have been injured by the ruling of the court it is difficult to perceive. Upon the issue made by the first replication the appellees were bound to prove the partnership, and the articles of partnership themselves were certainly the most available evidence for that purpose. So far as that issue is concerned the admission of them in evidence, at the instance of appellants, would have been but permitting them to establish appellees' case. The fact the court refused to allow them to do this, certainly affords no ground for complaint on the part of the appellants. So far as the issue made by the second rejoinder to the second replication is concerned, the fact that the partnership existed up to the 2d of January, 1878, is admitted on the record by both parties, and hence the evidence offered was irrelevant under that issue.

The point is also made that the court erred in refusing to permit Jacob Hoffheimer, a witness on behalf of appellants, to detail a conversation which he claimed to have occurred, only a month or so after the dissolution, between himself and Joseph Gideon, an alleged traveling salesman of appellees. The object of the proposed evidence was to prove appellees had notice of the dissolution of the partnership. There is nothing in this objection, for the record clearly shows that so far as notice could be established in this manner by Hoffheimer's testimony, it was done. He says: "Representatives of the house of Krohn, Feiss & Co. visited Galesburg after this dissolution. We have been dealing with them right along. Joseph Gideon, one of them, to the best of my recollection,— I can't say exactly when,—visited Galesburg on one of his regular trips,—it must have been two or three months after the dissolution. On this trip I had a conversation with him in reference to the dissolution of the firm. I think he (Gideon) had knowledge of the dissolution, from a personal conversation I had with him. * * * When I notified him of this dis-

solution, Gideon was representing the house of Krohn, Feiss & Co., and selling goods for them. The new firm of Hoffheimer & Co. bought goods from Krohn, Feiss & Co. through Gideon, at that time. These goods were shipped to and received by Hoffheimer & Co., and a bill was rendered for them. At the time of the conversation above alluded to, we spoke about the matter of the dissolution of the firm, and Gideon said that the credit would be just as good for the new firm, or something to that effect. I asked him if he thought the credit would be just as good as before the Quincy house withdrew, and he thought it would." Thus, notwithstanding the ruling of the court complained of, it is clear this witness told all he knew on that subject, and the conversation as to other matters, of course, would have been improper. Moreover, the weight of evidence seems to show that at the time of the alleged conversation Gideon was not in the employ of appellees at all, and they consequently would not have been bound by anything Hoffheimer may have told him. In addition to all this, the court afterwards told the witness he could state to the jury the whole conversation between him and Gideon, so there is not the slightest cause for complaint on the ground suggested.

Other points are made in appellants' brief, of a similar character, none of which we regard as well taken, or of sufficient importance to require special notice.

The evidence relating to the question of notice of appellants' withdrawal from the firm is circumstantial, and by no means conclusive. That a general notice was prepared and inserted in a newspaper published in Galesburg, at the time of their withdrawal, is conceded, and that a copy of this notice was mailed at Galesburg by appellants, in an envelope properly addressed to appellees at Cincinnati, their place of business and residence, is proven by the testimony of appellants. That no such notice was ever received by appellees is established just as clearly by their testimony. This question, with

other questions of fact, was properly left to the jury. If, as matter of law, in order to relieve appellants from further responsibility, it was necessary for them to prove, not only the preparing and mailing of the notice of their withdrawal, but also that it was actually received by appellees, then, for the purpose of supporting the judgment below, we must assume that the jury found, as matter of fact, that the notice was never received. The important question in the case, so far as this court is concerned, is, whether the law is as just suggested, and this question is presented by the instructions, both given and refused.

The court, on behalf of appellees, instructed the jury, in substance, that although they might believe, from the evidence, that the appellants prepared and sent, in a letter or envelope properly addressed to the appellees at Cincinnati, a notice of their withdrawal from the firm, yet if they further believed, from the evidence, that appellees never received such notice, and that neither they nor their lawfully authorized agent otherwise received notice, or had knowledge of such withdrawal or dissolution of the firm, then the appellants had failed to establish notice, within the meaning of the law. On the other hand, the court refused to instruct the jury, at the instance of the appellants, that it was sufficient, for the purpose of establishing notice, to prove the preparing and sending a notice in the manner above stated. We have no doubt of the correctness of the ruling of the court on this subject. The general rule, as we understand it, is this: As to persons who have never had any business transactions with the firm, notice by publication is sufficient; but as to those who have had previous dealings with it, actual notice, or its equivalent, must be shown. This rule seems to be supported by an unbroken current of authority, and it is certainly promotive of justice and fair dealing. To hold that the mere mailing of notices to patrons of a firm is sufficient, without regard to whether they were ever received or not, as

is claimed by appellants, would be to establish, by judicial legislation, a species of constructive notice hitherto unknown to the law, so far as we are advised. It is doubtless true that proof of the mailing of notices, properly addressed, is *prima facie* evidence of their having been received by the party addressed; but this is a mere presumption of fact, which may be rebutted, as was done in this case. To give it the effect contended for, would be to declare it a *presumptio juris et de jure,* for which we find no authority. Moreover, it would be but to invite the grossest frauds upon distant merchants, who would have no adequate means of protecting themselves. We prefer to leave the question with the jury, where we understand the law leaves it, unfettered and unembarrassed by any artificial rule of evidence that might prevent them from finding the real truth.

Perceiving no cause for disturbing the judgment of the Appellate Court, it will therefore be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHOPE took no part in the consideration of this case.