THE ASHLEY WIRE COMPANY *et al.*

*v.*

THE ILLINOIS STEEL COMPANY.

*Filed at Ottawa November 9, 1896.*

1. CORPORATIONS—*action of irregular meeting of directors authorizing mortgage—defense.*  The defense that a meeting of the directors of a corporation at which a mortgage of its property was made was held under an irregular notice and at an unauthorized place is not available in a suit to foreclose the mortgage, where no action has been taken in disaffirmance of the proceedings at the meeting or in repudiation of the note or mortgage.

2. SAME—*record of directors' meeting is notice to members.*  The record of a meeting of directors in the books of a corporation is notice to its members.

3. SAME—*mortgagee not affected by irregularities in meeting of directors.*  Irregularities in the meeting of a corporation at which a mortgage is executed do not affect the mortgagee dealing in good faith with the company, but such mortgagee has the right to assume that the provisions of the by-laws have been complied with.

4. SAME—*secretary's signature to call for meeting of directors may be affixed by president with a stamp.*  · That the signature of the secretary of a corporation to a notice of a meeting of directors was made by a rubber stamp in the hands of the president does not affect the validity of the meeting, where the secretary attended the meeting, recorded its proceedings, and treated it as regularly called and its directions as binding upon him.

5. SAME—*when notice of directors' meeting need not state business to be transacted.*  A notice of a meeting to directors need not state the business to be transacted, where it is called under an adjournment of a prior meeting subject to the call of the president for the report of a committee appointed about the business to be transacted, and the business is the execution of a mortgage to secure an account contracted in the ordinary business of the corporation.

6. SAME—*provision of by-law as to regular meetings does not control special meetings.*  A by-law of a corporation requiring that regular meetings of the board of directors shall be held at its general office does not prevent the holding of special meetings at any place that would be lawful in the absence of restriction.

7. SAME—*when authorization of provision in mortgage is sufficient.*  A mortgage of a corporation is not invalid as to special provisions declaring the whole debt due for default in interest, because the records of the meeting of the directors at which it was executed

do not show such provisions, where the draft of the mortgage was present at the meeting and its provisions discussed.

8. SAME—*rights of mortgagee not affected by fact that debt secured previously existed.* A mortgagee in a mortgage from a corporation to secure an existing debt is entitled to rely on the same presumption of regularity that obtains in other cases, where, by making the mortgage, the corporation obtained an extension for two years.

9. EVIDENCE—*what will not overcome presumption that notice of directors' meeting was received.* The presumption of the receipt of a notice of a meeting of directors of a corporation, deposited in the post office, properly stamped and addressed to one of the directors, is not overcome by his mere failure to recollect its receipt or his impression that he did not receive it.

*Ashley Wire Co.* v. *Illinois Steel Co.* 60 Ill. App. 179, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Second District, affirming, on a writ of error, the decree of the Will circuit court in the cause of the Illinois Steel Company against the Ashley Wire Company and others. Upon rendition of such judgment of affirmance the following opinion, reported in 60 Ill. App. 179, was announced:

"CARTWRIGHT, J.: Defendant in error filed its bill March 7, 1894, in the circuit court of Will county, to foreclose a mortgage executed July 19, 1893, by the Ashley Wire Company, by the hand of C. H. Carpenter, its president, under its corporate seal, attested by James R. Ashley, its secretary, and recorded on the same day in the recorder's office of said county, where the mortgaged premises were situated, securing the payment of a promissory note for $67,246.24, due in two years, with interest at five and a half per cent, and providing for the insurance of the buildings on the mortgaged premises in the sum of $50,000 for the benefit of the mortgagee. It was stipulated in the mortgage that in default of payment of in-

terest when due the whole principal and interest should, at the option of the mortgagee, become due and the mortgage be foreclosed, and it was alleged in the bill that default had been made in the payment of interest due January 19, 1894, wherefore the mortgagee had elected to declare the whole indebtedness due.   The other plaintiffs in error were made defendants with the Ashley Wire Company under averments that they had or claimed some interest in the mortgaged premises which it was alleged were subject to the mortgage.   It was also averred that the Ashley Wire Company was insolvent, and that George W. Bush had been appointed receiver of its property and estate, in pursuance of a bill filed for that purpose by the First National Bank of Joliet.

"The Ashley Wire Company answered the bill, admitting that on July 19, 1893, it was largely indebted to the complainant, and that on that day the mortgage in question was duly recorded in the recorder's office of Will county, purporting to be executed by it to secure such indebtedness, but insisting that the mortgage was not binding on it because its officers acted without lawful authority in the execution of such mortgage.   It was admitted that Bush was receiver of the company, and it was claimed that when the mortgage was executed the company was insolvent, and that complainant was aware of that fact.   The First National Bank of Joliet, John Y. Brooks and the Will County National Bank of Joliet filed answers, claiming rights as judgment creditors and denying the validity of the mortgage.   George W. Bush answered as receiver, setting up his appointment as such receiver and his possession of the property, and neither admitting nor denying the other allegations of the bill.

"Replication having been filed, the proofs were heard by the court, and a decree was entered finding that the mortgage was a valid and binding security, and for a foreclosure of the same, and a sale of the mortgaged premises to pay the sum of $72,752.86, being the amount

due on the note together with moneys advanced by complainant for insurance and interest thereon, and $500 solicitor's fees, all of which were provided for by the terms and conditions of the mortgage.   The only question in the case is whether the note and mortgage were binding obligations of the Ashley Wire Company.

"At the hearing the complainant produced and offered in evidence the note described in its bill, dated July 19, 1893, for $67,246.24, payable two years after date, with interest payable semi-annually at five and a half per cent, signed by the Ashley Wire Company, under the hand of C. H. Carpenter, its president, attested by J. R. Ashley, its secretary, and also the mortgage in said bill described securing the payment of said note, with the provisions above stated, duly executed by the Ashley Wire Company, under the hand of its said president, and its corporate seal attested by its said secretary, together with the certificates of acknowledgment and recording thereof in accordance with the averments of said bill.   Complainant also proved that default was made in the payment of the installment of interest due January 19, 1894; that the Ashley Wire Company had no insurance on the mortgaged property after January 1, 1894, and that complainant effected such insurance and paid $1500 in premiums on account of the same.   It was then agreed by defendants, that if complainant was entitled to a decree of foreclosure it should recover $1500, and $69.44 interest thereon, for insurance premiums.   By this proof the complainant made out a *prima facie* case that the note and mortgage were valid obligations of the Ashley Wire Company, executed by its authority, and the defendants took upon themselves the burden of proving that it was not so executed. *Smith* v. *Smith*, 62 Ill. 493; *Sawyer* v. *Cox*, 63 id. 130; *Wood* v. *Whelen*, 93 id. 153; *McDonald* v. *Chisholm*, 131 id. 273; *Glover* v. *Lee*, 140 id. 102; *Atwater* v. *American Exchange Bank*, 152 id. 605.

"It was contended by the defendants that the note and mortgage were not binding on the Ashley Wire Company

because they were executed by its officers under authority conferred at a meeting of its board of directors which was not regularly convened in accordance with its by-laws, and which was held at a place not authorized by such laws, and also that the special provisions of the mortgage, such as declaring the debt due on default in payment of interest, were not binding because not specified in the record of the meeting. To support their claims the defendants offered evidence, and the proofs established the following facts: The by-laws of the Ashley Wire Company provided that its business should be managed by a board of seven directors, to be elected by the stockholders at their annual meeting to be held on the first Thursday after the tenth day of July in each year. The officers of the company were a president, secretary and treasurer, to be appointed by the board of directors from their own number, as soon as practicable after the election of such board. The by-law regulating meetings of the board of directors is as follows:

" '*Fourth*—Regular meetings of the board of directors shall be held quarterly, the first Thursday in the month, commencing October 5, 1882, at the office of the company in Joliet. The president or any two directors shall have the authority to call special meetings of the directors, when in his or their judgment he or they think the interests of the company demand their attention. And he or they shall require the secretary to give a reasonable notice to such directors, in writing or in person, of the time of such meeting, and at each regular or called meeting the secretary shall present a full report of the business transacted since the previous meeting of the board. Four directors shall constitute a quorum to do business at all meetings.'

"There was also a resolution of the board that the notice to directors should be in writing. An annual meeting of the stockholders was held at the office of the corporation in Joliet, July 13, 1893, at which H. S.

Smith, S. H. Sweet, C. H. Conover, E. C. Hager, Charles Pettigrew, C. H. Carpenter and J. R. Ashley were elected directors.    Immediately on the adjournment of the stock-holders' meeting the board of directors met, all being present except Hager.    At that meeting C. H. Carpenter was elected president and J. R. Ashley was elected secre-tary.    The president and C. H.. Conover and S. H. Sweet were appointed a committee to confer with complainant, the Illinois Steel Company, concerning its request for the cancellation of a contract under which the Ashley Wire Company had been buying wire rods from com-plainant, and the committee was directed to make such arrangements for the adjustment of the account due com-plainant as might be thought best, and to report at the next meeting of the board of directors.    The board then adjourned subject to the call of the president.    The com-mittee so appointed conferred with complainant, and on July 15, 1893, the president called a meeting of the board of directors, of which a notice was mailed to each director July 15, 1893, except the president and secretary.    The notice mailed to the director Hager was as follows:

"*E. C. Hager*, *Esq.*, *Bay View*, *Mich.:*        "*July 15, 1893.*

"*Dear Sir*—Pursuant to adjournment, the directors of the Ashley Wire Company are hereby requested to meet Wednes-day, July 19, 1893, at the hour of 1 P. M., at the Union League Club rooms, Chicago.    Matters of importance will be brought before this meeting for consideration, and a full attendance is requested.                    J. R. Ashley, *Secretary.·*
                                  By order of the President.

"The other notices were the same as this, except in the address.    The president wrote the notices, and affixed the name of the secretary by means of a rubber stamp which was in the office of the corporation.    In pursuance of the notice a meeting was held at the time and place therein mentioned.    H. S. Smith and Charles Pettigrew, two of the directors, sent to that meeting their resignations as directors, because they were directors of the Illinois

Steel Company and deemed it improper to act in the matter of its claim.   E. C. Hager did not attend the meeting, but S. H. Sweet, C. H. Conover, C. H. Carpenter and J. R. Ashley, the remaining directors, were present and participated in the meeting, and its proceedings were duly entered in the records of the corporation.   Every director either received written notice of the meeting or was present and took part in it, unless the notice mailed to Hager failed to reach him.   The account with complainant was adjusted and was then due, the rate of interest to be paid was agreed upon by conference with the officers of complainant, the extension of time and security was agreed upon, and the execution of a note and mortgage for the unpaid account, due on or before two years from date, with interest at five and one-half per cent, was authorized.

"The alleged illegality in convening this meeting of July 19 consists in the want of a statement in the notice of the particular business to be done at the meeting, the fact that the president affixed the secretary's name and sent the notice by mail, and a claim that the notice was not received by the director Hager.   It is also argued that the meeting could only be held at the office of the corporation in Joliet.   In our judgment a defense of this character is not now available to the defendants.   The act sought to be impeached was within the general powers of the board of directors, and it has never been disavowed by the corporation.   The record of the meeting of July 19 is the last entry in the record book of the corporation.   No meeting of directors or stockholders has been held, and no action has been taken by the corporation, or any director or stockholder, in disaffirmance of the proceedings at that meeting or in repudiation of the note or mortgage.   The record of the meeting in the book of the corporation was notice to its members, and the mortgage was recorded on the day of its execution.   If the notice mailed to Hager was not received, he made no objection and gave

no notice of that fact, although informed by the records of the corporation and the public record of what had been done. Those affected by the act unquestionably may, and apparently do, prefer to ratify it as just and proper even if irregularly done, and, of course, if that is the case the other defendants have no right to interfere. All that has been done in the way of questioning the act of the agents of the corporation is the filing of an answer by a solicitor, presumably employed and directed by the president, who executed the note and mortgage. The repudiation of its obligation has never been authorized by the directors or stockholders, and we think that the mortgage is binding by acquiescence and ratification. *Atwater* v. *American Exchange Bank, supra; Louisville, New Albany and Chicago Railway Co.* v. *Carson,* 151 Ill. 444.

"But if the alleged defenses as here made are proper to be considered, the first question that arises is whether complainant can be affected by a failure of the corporate agents to observe the rules and regulations enacted for the internal management of the corporate affairs. When the mortgage was made the records of the corporation showed that power to make it had been conferred by the governing body of the corporation having the management of its corporate affairs. The indebtedness was created in the ordinary course of business, by the purchase of wire rods, from which the corporation manufactured its product. It was due and unpaid, and complainant dealt in good faith, without notice of any irregularity. Defendants' claim is, that the security so taken is invalidated if they are able to show that the signature of the secretary to the notices was made with a rubber stamp held by the hand of the president, or that the notice mailed to Hager in ample time, under a presumption that he received it, was not in fact received. There are cases where it has been held essential to the validity of an instrument that the meeting at which it was authorized was called in accordance with the rules governing the rela-

tions between the corporation and its agents, but they have never been recognized as affecting strangers to the corporation in this State.   The rules laid down in such cases originated when the relations of corporations to the general business of the country were widely different from what they now are.   Not many years ago corporations were few in numbers, and organized for the execution of enterprises beyond the scope of such capital as could be aggregated in a partnership. _ Such concerns were naturally ponderous and moved with much formality in the execution of their business.   Their relations to the public generally were very limited.   But now the every-day business of the country is transacted by corporations.   Every city and village is full of them, and they have largely supplanted the partnership in the store and the shop.   The necessities of business require that the public, dealing with their officers in good faith on the strength of apparent power, should be protected against such claims as are here made.   The courts of this State have always protected third parties dealing in good faith with corporations within the general scope of their powers.   In *Smith* v. *Smith, supra,* it was held that third parties dealing with a corporation are not bound by rules adopted for its government or required to know the provisions of its by-laws, which are private and only accessible to the officers of the corporation, and that a deed not countersigned by the secretary was valid although the by-laws required it to be so countersigned. · In *Union Mutual Life Ins. Co.* v. *White,* 106 Ill. 67, although the corporation in that case was a foreign one, the rule was declared generally that rules and by-laws are not open to inspection by the public, and that persons not connected with the corporation are not presumed to know what they contain.   We do not think that complainant was bound to know what provisions or regulations had been made by the Ashley Wire Company for convening

the meeting of its agents or governing body, but had a right to assume that they had been complied with.

"However, an examination of the objections shows them to be without merit.   It certainly made no difference to anybody who held the rubber stamp, and if the secretary did not know when it was done, he attended the meeting, acted as secretary, recorded its proceedings and treated it as regularly called and its directions as binding on him.   He ratified the call, and it affected nobody, in any view of the question.

"It was not necessary that the notice should state the business to be transacted, both because the meeting of July 13 was adjourned to meet at the call of the president, when the committee appointed about this business was to report, and the business to be transacted was ordinary business of which no statement was required. It should certainly not be regarded as extraordinary business for a corporation to pay or secure the payment of an account contracted in the ordinary business of the corporation.

"The evidence that notice of the meeting was deposited in the post-office, properly stamped. and addressed to Hager at Bay View, Michigan, on July 15, was *prima facie* proof that he received it.   (*Meyer* v. *Krohn*, 114 Ill. 574; *Young* v. *Clapp*, 147 id. 176.)   This was met by testimony of Hager that he had no recollection of receiving the notice; that he had tried to rack his brains so as to be positive about it, but was not able to be positive, and that he did not think that he received it.   The presumption that the letter was received is founded upon the regularity and certainty with which the mail is carried and delivered.   When letters are properly stamped and addressed, the uniformity with which they are received is such that the failure to receive such letter is a very unusual circumstance, and we do not think that the presumption was overcome by mere failure of Hager to recollect, or his impressions on the subject.   The by-law

was silent as to the manner in which written notice of a special meeting of the board should be served. If it had provided for notice by mail, it would be immaterial whether Hager ever received the notice which was properly sent in due time by that method. It would be unnecessary to inquire whether it was received or not. But if the notice was received by Hager it is equally immaterial by what means it was conveyed to him. We think that the circuit court was right in finding, from the evidence, that he did receive it, and therefore the method employed was of no consequence.

"The by-law required that regular meetings of the board of directors should be held at the office of the corporation in Joliet. The business done at this meeting was an exercise of a power of the board, as agents of the corporation, that might, in the absence of any prohibition, be performed at any place. (*Reichwald* v. *Commercial Hotel Co.* 106 Ill. 439.) In enacting the by-law the restriction as to place was not applied to meetings generally, but was limited to the regular meetings, and special meetings could be held at any place that would otherwise be lawful. The board had several times met in Chicago without question or objection.

"As to the claim that the mortgage was invalid as to the special provisions not contained in the statutory form of mortgage, the proof is that the draft of the mortgage was present at the meeting. The record of the meeting shows that complainant's proposition was that the note should draw six per cent interest, and after a conference it was agreed to accept five and one-half per cent. The draft of the mortgage is shown by the evidence to have been changed accordingly. Other provisions were talked of, and the same paper discussed and amended was executed on the same day. The resolution referred to the identical mortgage executed.

"None of the objections made seem to us to have any force.

"It is urged that the numerous cases in which the rights of strangers to corporations dealing in good faith with their officers in the exercise of apparent power conferred upon such officers, as agents of the corporation, against claims that the act was not in fact legally authorized, do not apply to this case, because the mortgage was made to secure an existing debt. The debt was due, and by making the mortgage the corporation obtained an extension for two years. It was not made as a donation, and we see no reason to deny complainant the right to rely on the presumptions that obtain in other cases.

"The decree will be affirmed."

GEORGE S. HOUSE, for appellants:

The rule is, that a board of directors of a corporation can only act in a meeting duly convened, and the action of a majority, when the assent of each is separately obtained or when given in a meeting not duly convened, is invalid and not binding upon the corporation. *Simon* v. *Sevier Ass.* 54 Ark. 58; *Stowe* v. *Wyse*, 7 Conn. 214; *Baldwin* v. *Canfield*, 26 Minn. 43; *Hessington* v. *District Township*, 47 Iowa, 11; *Dey* v. *Mayor*, 19 N. J. Eq. 412; *Commonwealth* v. *Cullen*, 13 Pa. St. 133; *Stoystown* v. *Carver*, 45 id. 386.

A distinction exists in the requirement as to what the notice to the directors shall contain with reference to general or special meetings. It is necessary in the notice of a special meeting to particularly specify or call attention to the business to be transacted. Field on Corporations, sec. 231; *People* v. *Batchelor*, 22 N. Y. 128; *Merritt* v. *Ferris*, 22 Ill. 309.

Notice must be given each director of a special meeting, unless waived by unanimous consent, all being present and taking part in the proceedings, otherwise the special meeting is not legally convened. *Railroad Co.* v. *Railroad Co.* 12 Buch. 62; *Tuttle* v. *Railroad Co.* 35 Mich. 247; *Stevens* v. *Home Society*, 12 Vt. 688; *Farwell* v. *Copper Works*, 8 Fed. Rep. 66.

In the absence of any provision in the by-law, resolution or statute directing the manner of service the notice must be served personally on each director.   *Harding* v. *Vandewater*, 40 Cal. 77;   *Stowe* v. *Wyse*, 7 Conn. 214;   *Davis* v. *Bank*, 8 id. 191;   *Tuttle* v. *Railroad Co.* 35 Mich. 247;   *Pike County* v. *Rowland*, 94 Pa. St. 238.

GARNSEY & KNOX, (E. PARMALEE PRENTICE, of counsel,) for appellee:

The rules and by-laws are in the possession of the mortgagor company and not open to inspection by the public, and persons not connected with the company are not presumed to know what their private books and journals contain.   *Insurance Co.* v. *White*, 106 Ill. 67;   *Smith* v. *Smith*, 62 id. 493;   *Wait* v. *Smith*, 92 id. 385;   *Plank Road Co.* v. *Murray*, 15 id. 336;   *Bank* v. *Pinson*, 58 Miss. 421;   *Moyer* v. *Terminal Co.* 25 L. R. A. 48;   *Fay* v. *Noble*, 12 Cush. 1;   *Walker* v. *Railroad Co.* 26 S. C. 80 ;   *Arapahoe Co.* v. *Stevens*, 13 Col. 534;   *In re Asiatic Banking Corp.* 4 L. R. Ch. App. 252.

The failure to comply with a by-law in calling a meeting of the directors of a corporation will not defeat a deed of trust made at such a meeting to a third person.   *Samuel* v. *Holladay*, 1 Woolw. 400 ;   *Rathburn* v. *Snow*, 123 N. Y. 343.

The service of notice by mail is sufficient.   *Williams* v. *Insurance Co.* 68 Ill. 390 ;   *Corbett* v. *Woodward*, 5 Sawy. 403;   *Chase* v. *Tuttle*, 55 Conn. 455;   *Covert* v. *Rogers*, 38 Mich. 363.

The mailing of the notice to Hager, the only absent director, being proved, a presumption arises that he received it in due course of mail.   Greenleaf on Evidence, sec. 40 ;   *Huntley* v. *Whittier*, 105 Mass. 392;   *Steamship Co.* v. *Otis*, 100 N. Y. 446;   *Marston* v. *Bigelow*, 150 Mass. 45;   *Meyer* v. *Krohn*, 114 Ill. 474.

The giving of a mortgage is ordinary business, which may be transacted at a special meeting, and a notice, if consistent with the by-laws, need not specify the object

of the meeting. *Reichwald* v. *Hotel Co.* 106 Ill. 496; *Davis* v. *Bank,* 8 Conn. 191.

When only ordinary business is to be transacted, even at an extraordinary meeting, the special object need not be stated. *Reichwald* v. *Hotel Co.* 106 Ill. 450; *Davis* v. *Bank,* 8 Conn. 492; Green's Brice's Ultra Vires, 354; *Samuel* v. *Holladay,* 1 Woolw. 400; *Zabriskie* v. *Railroad Co.* 64 U. S. 381; *Granger* v. *Mill Co.* 59 Cal. 678.

Ratification by acquiescence may be made by a corporation as well as an individual. Green's Brice's Ultra Vires, 467; *Sherman* v. *Fitch,* 98 Mass. 59; *Connett* v. *Chicago,* 114 Ill. 239; *Hoyt* v. *Thompson,* 19 N. Y. 287; *Bank* v. *North,* 4 Johns. Ch. 370; *Bank* v. *Matthews,* 93 U. S. 621; *Jones* v. *Guaranty Co.* 101 id. 622.

The action of the Ashley company in accepting the extension of time procured by means of this mortgage, and making no objection to the mortgage itself, is a ratification. *Samuel* v. *Holladay,* 1 Woolw. 400, and cases cited.

Mr. JUSTICE BAKER delivered the opinion of the court:

We not only have had the benefit of an oral argument, but have also carefully read and examined as well the briefs and arguments filed in the Appellate Court as the elaborate additional briefs and arguments submitted in this court. We concur in the judgment of the Appellate Court and in the reasons given for its decision. There is nothing in the case that requires any further expression of opinion on our part. Additional grounds that would go in affirmance of the judgment might be stated, but we deem it unnecessary to add to what has already been said.

The judgment is affirmed. *Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part in this court.