National Trust Bank, Appellant, v. George W. Seaman et al., Appellees.

Gen. No. 8,729.

Opinion filed April 11, 1933.

T. N. Cofer, for appellant.

Charles M. Connor, for appellee.

Mr. Presiding Justice Eldredge delivered the opin-ion of the court.

In March, 1930, the First National Bank of Charles-ton was the owner of a note for the principal sum of $3,182.75 signed by Charles R. Seaman and Opal L. Seaman, the consideration of which was money loaned by that bank to said Charles R. Seaman. Subsequent-ly appellant purchased the assets of that bank includ-ing the above note. This note was renewed several times until March 19, 1932, when, in vacation, appel-lant procured a judgment by confession against Charles R. Seaman, Opal L. Seaman and G. W. Sea-man, the latter being the father of Charles R. Seaman, and appellee here. The amount of this judgment was $3,684.47 and costs. At the succeeding term of the circuit court held in July, 1932, a motion was made by appellee to vacate the judgment and for leave to plead which was granted. Thereupon appellee, G. W. Sea-man, filed a plea denying the execution and delivery of the note on which the judgment was confessed. To this plea appellant filed two replications, the first of which joined issue as to that part of the plea denying execution of the note. The second replication is very lengthy and one in which numerous facts are set forth

to the effect that appellee knew that his name was signed to said note and by his silence is estopped from claiming that he did not execute the note in question. Later a stipulation was filed by the parties that the cause might be heard upon its merits without further pleading. A trial was had before a jury and a verdict returned finding the issues in favor of appellee, on which verdict judgment was entered.

The facts leading up to the execution of the note involved and on which judgment was taken, are briefly as follows: On August 21, 1930, Charles R. Seaman requested an increase in the loan and a renewal of the same. Appellant refused to grant this request unless he gave additional security. He told the officers of the bank that he could give his father (appellee) as such security. Appellant thereupon drew up a renewal note including the additional amount requested which made the principal sum thereof $3,280 and delivered it to Charles R. Seaman, who took the renewal note and subsequently returned it with the names of Charles R. Seaman, Opal L. Seaman and G. W. Seaman written thereon. The bank paid Charles R. Seaman the additional amount of the loan, took the new note and delivered the old one to him. The new note became due February 21, 1931, and several notices were sent by appellant to Charles R. Seaman requesting the payment thereof. The post-office address of both Charles R. Seaman and G. W. Seaman was Toledo, Illinois. On March 6, 1931, appellant addressed a letter to G. W. Seaman at said post-office address stating: "Your attention is directed to a note of $3,280.00 signed by your son Charles R. and yourself which fell due on February 21, 1931. We have notified Charles two or three times and also notified you on March 4th about this note. Inasmuch as it is so far past due it must have attention within the next few days." This letter was introduced in evidence as Exhibit No. 2. No reply having been received from G. W. Seaman,

appellant addressed another letter to him March 27, 1931 stating therein: ''We wrote you a few days ago to call at the bank at your first opportunity, and thus far have had no response from you. The reason we wrote you to come in was that a few months ago you signed Charles' note for $3,280.00 and the examiners who were here a short time ago have requested us to secure a financial statement from you. Your compliance with this request will aid us in carrying your paper.'' No reply was received to this letter which was introduced as Exhibit No. 4. Prior to the mailing of Exhibits 2 and 4, appellant had sent a notice that said note would become due February 21, 1931, but it was addressed as follows: ''Charles R. Seaman—G. W. Seaman, Toledo, Illinois.'' This notice is marked Exhibit No. 3. Subsequent to the mailing of Exhibits Nos. 2 and 4, a similar notice was mailed December 3, 1931, addressed in the same manner as Exhibit No. 3. This is Exhibit No. 5. On December 7, 1931, a similar notice was mailed and addressed in the same manner as Exhibits 3 and 5, that is, to Charles R. Seaman and G. W. Seaman jointly. This notice is Exhibit No. 6. On February 9, 1932, appellant mailed a letter addressed to G. W. Seaman solely and individually at Toledo, Illinois in which it said: ''We had a request about the first of the year that Charles' note be reduced materially. We wrote him on Jan. 21st to call at the bank and discuss this matter with us. But, thus far we have had no response from him. It is very important that this matter have his or your attention this week and we would suggest that one of you call at the bank and go over the matter with us.'' This letter was admitted as Exhibit No. 7. On February 19, 1932, appellant mailed a letter addressed to G. W. Seaman solely and individually at Toledo, Illinois, in which it stated: ''Please call at the bank at the earliest possible time as we have a very important matter which we

want to discuss with you. This matter should have your prompt attention.'' This is Exhibit No. 9.

On August 21, 1930, Charles R. Seaman had delivered to appellant a financial statement which disclosed that his assets were $17,155 and his total liabilities $14,802.75, leaving his net worth $2,352.25. In April, 1932, Charles R. Seaman and Opal L. Seaman each filed a voluntary petition in bankruptcy and were duly adjudged bankrupts.

G. W. Seaman, appellee, testified that he never signed the note in question nor authorized his son Charles R. to sign his name thereto; that he never received Exhibits 2 and 4 nor any of the other exhibits except Exhibits 7 and 9 which he admitted he did receive and testified in regard thereto: ''I read the letters (Exhibits Nos. 7 and 9) when they came; they didn't say nothing about the note only that they just wanted to reduce Charles' note and I wasn't paying his bills; didn't know that Charles had a note there; never told Charles that I would help to back him, and I never helped him to get any money and begged him not to buy the farm; knew he was paying too much for it; did not know he borrowed three thousand dollars from the First National Trust & Savings Bank of Charleston; knew it was taken over by the National Trust Bank of Charleston; I told Charley about the letters; a man named Johnson came to my house not long ago; Frank Johnson asked me in reference to the note whether I ever got any notice from the bank about the note and I told him I got a letter asking for a financial statement from me and I didn't answer it; got a financial statement blank that they wanted me to fill out besides those two letters, but didn't owe them nothing, so why should I answer them.''

On behalf of appellee the court gave to the jury the following instructions:

''2. The Court instructs the jury, that under the issues as joined in this case, it is incumbent upon the

plaintiff to prove by a preponderance of the evidence that the note in suit was executed by the defendant G. W. Seaman, as alleged, that the plaintiff is the owner of the same, and that said note is now due and unpaid.

"3. The Court instructs the jury, that if you believe from a preponderance of the evidence in this case that the note in controversy was not executed by the defendant, G. W. Seaman—that is, that he never signed the same, or authorized his name to be placed thereto by any one, but that his signature was placed to said note without his knowledge or consent—then you should find for the defendant, although such note may have passed into the hands of a bona fide holder before maturity.

"4. The Court instructs the jury, that the pleas of the defendant G. W. Seaman in this action consist of a general denial and also the execution and delivery of the note sued on herein; that is, the burden of the proof is on the plaintiff to prove that the said G. W. Seaman made, signed and delivered the note sued on to the plaintiff; and that, unless you believe from a preponderance of the evidence before you in this case that the said G. W. Seaman did make and sign or cause to be signed and delivered the said note to the said plaintiff, your verdict should be for the said defendant G. W. Seaman and against the plaintiff."

Appellant offered and the court refused to give the following instruction:

"2. You are further instructed that even though you may believe from a preponderance of the evidence in this case that the name of the defendant, G. W. Seaman, was forged to the note sued on in this case, yet if you further believe from the preponderance of the evidence that the said G. W. Seaman knew that the National Trust Bank had a note purporting to be signed by said G. W. Seaman, and the said defendant,

G. W. Seaman, failed, neglected or refused to inform the bank that the purported signature of his name to the said note was unauthorized and not binding on him within a reasonable time thereafter, and that thereby the bank was induced to rely on the genuineness of his signature to the said note, without any notice that said signature was invalid, and that the bank has suffered a financial loss thereby, then and under that state of the proof, the said G. W. Seaman is stopped from denying that his signature to the said note is invalid and not binding on him.''

The giving of the above three instructions for appellee and the refusal to give the instruction offered by appellant excluded from the jury any consideration of the question of estoppel *in pais* set up in the replication of appellant, and if there was any evidence to support said replication, the action of the court in regard to said instructions was erroneous. It was held in the case of *Paden v. Rockford Palace Furniture Co.*, 220 Ill. App. 534: ''It is a well-established rule of evidence that that which according to the common experience of mankind usually happens in the usual and ordinary course of business, is presumed to have happened in a particular case until the contrary appears from the evidence. *Commonwealth v. Jeffries*, 7 Allen (Mass.) 548; *Meyer v. Krohn*, 114 Ill. 574; *Ashley Wire Co. v. Illinois Steel Co.*, 164 Ill. 149; *State v. Gritzner*, 134 Mo. 512, 36 S. W. 39; *Western Twine Co. v. Wright*, 11 S. D. 521, 78 N. W. 942; *Oregon Steamship Co. v. Otis*, 100 N. Y. 446, 3 N. E. 485; *Perry v. German-American Bank*, 53 Neb. 89, 73 N. W. 538.''

In the case of *Commonwealth v. Jeffries*, 7 Allen (Mass.) 548, it was said: ''No rule of evidence is better settled or more clearly founded in good sense and sound policy than that which authorizes presumptions or inferences of fact to be deduced from the proof of

certain other facts, which, according to the common experience of mankind or the usual course of business naturally or necessarily lead to the result or conclusion which is sought to be drawn from them. Such presumptions . . . generating a belief or conviction in the mind as derived from those connections which are shown by experience, irrespective of any legal relation. The process of ascertaining one fact from the existence of another is essential to the investigation of truth, and prevails in courts of law as well as in the ordinary affairs of life, especially in cases where there is a well-known and established usage or course of business, and primary evidence of the existence of a fact is wanting or difficult to be obtained.''

After citing the case of *Commonwealth v. Jeffries, supra,* the court in *New York Cent. R. Co. v. Lehigh Stone Co.,* 220 Ill. App. 563, held:

''Applying this rule of evidence it has been frequently held that letters would be presumed to have been delivered from evidence of their having been deposited in the mail properly stamped and addressed; that telegrams properly addressed would be presumed to have been received from the fact of their delivery to a telegraph company for transmission, and that goods delivered to an express company and properly marked for consignment would be presumed to have been delivered to the consignee. *State v. Gritzner,* 134 Mo. 512, 36 S. W. 39; *Western Twine Co. v. Wright,* 11 S. D. 521, 78 N. W. 942; 1 Greenleaf on Evidence 40; *Plano Mfg. Co. v. Parmenter,* 39 Ill. App. 270; *Ashley Wire Co. v. Illinois Steel Co.,* 164 Ill. 149; *Meyer v. Krohn,* 114 Ill. 574.

''In applying this rule in *Oregon Steamship Co. v. Otis,* 100 N. Y. 446, 3 N. E. 485, the Supreme Court of New York said: 'The presumption indulged is one of fact and so open to rebuttal and contradiction and consists merely in the natural inference which may be

drawn from the experienced certainty of transmission. The great bulk of letters sent by mail reach their destination, and equally so the great bulk of telegrams. A failure in either case is an exception; possible, but rare. The letters are transported by government officials, acting under oath and upon a system framed to secure regularity and precision, the telegrams, by private corporations, whose success and prosperity depend largely upon the promptness and accuracy of the work, and are faithful under the incentive of interest.' ''

In the case of *Clark v. People,* 224 Ill. 554, it was held: ''If a letter is put into the post-office, that is *prima facie* proof, until the contrary appears, that the party to whom it is addressed received it in due course. (2 Best on Evidence, sec. 403; Underhill on Evidence, sec. 230; Wharton on Crim. Evidence,—8th ed.—sec. 837; *Ashley Wire Co. v. Illinois Steel Co.,* 164 Ill. 149; 22 Am. & Eng. Ency. of Law,—2d ed.—p. 1252, and cases there cited.)''

It may be conceded that as to Exhibits 3, 5 and 6, the above rule might not apply for the reason that these letters or notices were addressed to Charles R. Seaman and to appellee jointly, the name Charles R. Seaman preceding the name of appellee, and if appellee's name was forged to the note and Charles R. Seaman received these notices he would not in all probability make them known to appellee. It may be conceded further that as to the letters, Exhibits 7 and 9, which appellee admits he did receive, would not be sufficient to charge him with notice that his name appeared upon the note as they did not specifically so state. But no such concession can be made as to Exhibits 2 and 4 which were mailed to appellee personally and specifically notified him that his signature was attached to said note and the evidence that these letters were mailed to him properly addressed and

postage prepaid is prima facie evidence that he received them and it then became a question of fact for the jury to determine whether appellee did receive them. *Meyer v. Krohn,* 114 Ill. 574.

The general rule as to estoppel by silence as stated in 10 R. C. L. p. 810, § 118 is: ''Mere silence when a forged signature is shown to the person named as maker of a note will not operate as an estoppel unless the holder has been damaged thereby, but an alleged maker may become liable by failure to repudiate, where by such action he has caused the holder of the paper to suffer damage and loss, and a party appropriating any benefit from the use of forged paper cannot thereafter repudiate his alleged signature.'' Estoppel by silence has long been recognized in this State. *Mullaney v. Duffy,* 145 Ill. 559; *McDonald v. Stark,* 176 Ill. 456.

In the case of *Brown v. People's Nat. Bank,* 170 Mich. 416, 136 N. W. 506, it was held: ''The general rule is that estoppel arises against one who, with knowledge of the fact, fails to give notice until an opportunity of recovery on the forged instrument, which would have been available if prompt notification had been given, is lost.'' The court in the above cited case cites Ewart on Estoppel, 135 as follows: ''If a man's name be forged, and after himself becoming aware of the fact he refrain from advising the holder of the document, and by reason of such inaction the holder's position is changed (by the death, escape or bankruptcy of the forger, or otherwise), there will be an estoppel of the man whose name is forged.''

The right of seeking restoration and payment from the person who accomplished or procured the forgery is, in itself, a substantial and valuable right. *Leather Mfrs. Nat. Bank v. Morgan,* 117 U. S. 96. The doctrine of estoppel by silence will prevail when injury of some nature or in some degree would result. *Rothchild v.*

*Title Guarantee & Trust Co.,* 204 N. Y. 458. If appellee in this case did have knowledge that his forged signature appeared upon the note in question and kept silent in regard thereto thus leading appellant to believe that it was genuine and to rely upon it as a surety thereon until the other makers of the note went into bankruptcy and appellant was thereby deprived of an opportunity of collecting the note or a part thereof, then appellee was estopped from setting up the defense of forgery or disclaiming his liability upon the note. Exhibits 2 and 4 were prima facie evidence that appellee had such knowledge and the jury should have had an opportunity of passing upon that fact and it was error to exclude the consideration thereof from the jury.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*