NICHOLAS KEHOE, Appellant, v. M. M. CARVILLE *et al.,*
Appellees.

84   415<br>127   114

1. Pleading: ANSWER: TIME OF FILING. An answer, consisting of a general denial to certain amendments to the plaintiff's petition, may properly be allowed six months after the filing of such amendments, and after the trial, but before the final submission of a cause, where the trial has been conducted upon the theory that the averments of said amendments to the petition are in issue. .

2. **Partnership:** DISSOLUTION: NOTICE. Where a partnership conducting a creamery paid for milk furnished it by check upon the firm's account at a bank, and upon a dissolution of the partnership the business was continued by one of the partners, who thereafter paid for milk by checks in his individual name, and upon his personal account at the bank, *held,* that such course of dealing was sufficient to give notice of the dissolution of the partnership to persons becoming creditors for milk furnished after the firm had been dissolved.

*Appeal from Delaware District Court.*—Hon. C. F. Couch, Judge.

### Saturday, January 30, 1892.

Action in equity by which the plaintiff seeks to recover judgment against the defendants upon certain money demands, and to subject certain chattel property to the payment of the judgment. There was a full hearing on the merits, which resulted in the dismissal of the petition. The plaintiff appeals.—*Affirmed.*

*M. W. Herrick* and *Sheean & McCarn,* for appellant.

*J. H. Peters* and *C. H. Husted,* for appellee.

Rothrock, J.—I. It appears from the record that the petition was filed on the twenty-seventh day of November, 1888. No appearance was made for the defendant Carville, and he was adjudged to be in default. The defendant King answered the petition on the seventh day of January, 1889. On the twentieth day of May, in the same year, plaintiff filed an amendment to his petition; and on the tenth day of November, 1889, he filed another amendment to his petition. The evidence was taken and submitted to the court, and the cause was taken under advisement by the court, with an agreement that the decision should be filed in vacation. The cause was not decided until during the next term of the court. The defendant King had filed no answer

1. PLEADING: answer: time of filing.

to the amendments to the petition.   The record made upon the decision of the cause contains the following clause:   "Now comes on this eighth day of May, 1890, Judge Couch, before whom said cause was heretofore tried, and now comes defendant King and asks and is granted leave to file answer to amendments to petition (said answer being submitted to court with argument), to which plaintiff excepts."

The answer to the amendments was a general denial.   It is claimed that the answer was filed too late. The cause was tried upon the theory that the petition and both amendments thereto were in issue.   The plaintiff had not demanded a default against King for failure to answer the amendments.   The answer was filed before the cause was finally submitted to the court for decision.   It was submitted to the court with the argument of the defendant.   We think, under these facts, there was no abuse of discretion in allowing the answer to be filed.   Indeed, it is somewhat questionable whether any additional answer was required, in view of the single question which appears to us to be involved in this appeal.

II. It appears from the evidence that in the spring of the year 1887 the defendants entered into a partnership to conduct and operate two creameries.   The partnership contract was not in writing. . The name of the firm was Carville & King.   The business was conducted in that name during the summer and fall of that year, and until about the first day of December.   The partnership expended money in building one of the creameries, and at the end of the operations for that season the partnership was dissolved, and upon a settlement it was found that Carville was indebted to King in the sum of one thousand dollars, and to secure the payment thereof Carville executed to King the chattel mortgage upon the property, the validity of which mortgage is in con-

2. PARTNERSHIP: dissolution: notice.

troversy in this action.   There is no question but that
there was in fact a dissolution of the partnership.
Carville opened business at the creameries in the spring
of 1888, and continued until about November of the
same year when he suddenly disappeared; and, so far
as appears, his whereabouts are unknown.   The plain-
tiff and others residing in the neighborhood sold milk
to the creameries; and, when Carville left the country,
there was indebtedness aggregating nearly one thousand
dollars due to the patrons of the creameries.   These
creditors assigned their claims to the plaintiff, and he
represents all the assignors as well as himself.   We
have said that the partnership was in fact dissolved,
but it is claimed in behalf of the plaintiff that he and
those whom he represents had no notice of the dissolu-
tion.   This is the only material question in the case.
It is true it is claimed that the settlement and the
mortgage taken by King were fraudulent, but this is
not a material question in the case, because if as to
third persons there was a dissolution of the firm, it is
wholly immaterial, unless such persons were creditors
of the firm before it was dissolved.   The claims pre-
sented by the plaintiff are for milk furnished to the
creameries in the month of October, and up to the clos-
ing of the business by the flight of Carville in Novem-
ber, 1888.   It appears from the evidence, that, during
the whole time that the creameries were operated, those
who furnished milk were paid by checks on banks at
Monticello or Hopkinton.   During the season of 1887
these checks from the two creameries carried on by the
defendants were signed by Carville & King.   It is not
absolutely certain that all of the checks were so signed,
but that was the general method of doing business, and
the bank accounts upon which the checks were drawn
were kept in the name of Carville & King.   The checks
which were given to the plaintiff and his assignors in
the year 1888 were not signed by Carville & King.
The record shows that the defendant introduced all of

these checks in evidence, with the possible exception of one or two, and that they were drawn and signed by M. Carville upon his account with a bank at Monticello; and it further appears that during the year 1888 King was not personally engaged in the business, but was employed elsewhere. We think the court was right in determining that the plaintiff and his assignors had notice of the dissolution. It is true that they testify as witnesses that they supposed the partnership continued, and there are some facts and circumstances which tend to support their testimony. We need not set out these facts and circumstances. They ought not to be allowed to overcome the fact that the checks which the patrons of the creameries received during the whole of the year 1888 showed upon their face that they were not issued by Carville & King, but by Carville alone.

The decree of the district court is AFFIRMED.