Arnold v. Hart.

---

## Adolph Arnold et al. v. Charles Hart.

1. EVIDENCE—*Continued Use of Original Pass Book as Evidence of Liability of Banking Firm Claimed to Have Been Dissolved.*—In a suit against persons alleged to have been partners in the banking business for money claimed to have been deposited with them, defended on the ground of the dissolution of the partnership, plaintiff proved the partnership, that the firm issued him a bank book and that transactions with the bank, both before and after the alleged dissolution, were entered in such book at the bank by the clerk. *Held,* that the book was admissible in evidence.

2. PARTNERSHIP—*Notice of Dissolution of.*—In a suit against a part-
nership, defended on the ground of the dissolution of the partnership,
the court holds that the partnership continued as to the plaintiff until it
is shown that he had notice of its dissolution.

3. BANKS AND BANKING—*Discontinuance of Business Waives Notice
or Demand by Depositors.*—When a bank discontinues the banking busi-
ness it waives the necessity for a notice or demand by the depositor for
his money before he becomes entitled to sue therefor. By closing its
doors and ceasing the banking business it says in effect that it will not
pay, and the law will not require a vain and fruitless thing to be done.

4. TRIALS—*When Peremptory Instructions Should Be Asked for.*—
This court will not review the action of the trial court in refusing to
give an instruction directing a verdict for the defendant where the in-
struction is asked for along with others on issues of fact submitted to the
jury.

5. BURDEN OF PROOF—*As to Notice of the Dissolution of a Partner-
ship.*—In a suit against members of an alleged partnership, defended by
certain members on the ground that they had retired from the firm, the
burden of proof, the plaintiff having shown the existence of the partner-
ship, is on such defendants to show that the plaintiff had notice of the
dissolution, before they can escape liability.

**Assumpsit,** for a bank balance. Appeal from the Circuit Court of
Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this
court at the October term, 1897. Affirmed. Opinion filed March 24,
1898.

ESCHENBURG & WHITFIELD and SAMSON & WILCOX, attor-
neys for appellants.

COLLINS & FLETCHER, attorneys for appellee.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Appellee sued appellants, A. J. Howe and Gustav A.
Bodenschatz, as copartners, doing business as Arnold Bros.,
Baker & Co., the declaration being the common counts.
Service was had only upon appellants, who pleaded non-as-
sumpsit and non-joint liability, and verified both pleas. A
trial before the Circuit Court and a jury resulted in a ver-
dict and judgment against appellants for $1,164.48, from
which this appeal is taken. It is claimed by appellants, first,
that there was error in the rulings of the trial court in
admitting and rejecting evidence; second, that the evidence

is not sufficient to sustain the verdict; third, that the court erred in giving and refusing instructions; fourth, that the verdict is contrary to the instructions.

The evidence shows that appellants and said Howe and Bodenschatz entered into a contract of partnership December 23, 1892, to do a general banking, exchange, insurance and mortgage business under the firm name of Haymarket Produce Bank, commencing May 1, 1893, and expiring April 30, 1903; that they conducted business as bankers under this contract to November 5, 1895, when articles of dissolution were entered into, under date of October 25, 1895, between the partners, whereby a bond of $300,000 was furnished by said Howe and Bodenschatz to appellants, for their protection against the liabilities of said partnership, and the partnership was dissolved, Howe and Bodenschatz agreeing to notify the creditors of the old firm of its dissolution, to pay all its liabilities, and not to use the name of Arnold Bros., Baker & Co. in continuing the business, and appellants agreeing not to engage in the same business carried on by the old firm within five years in Chicago, and thereby sold all their interest in the property, outstanding accounts and choses in action of the old firm to Howe and Bodenschatz.

After this dissolution Howe and Bodenschatz continued the banking business at the same place, under the name of Haymarket Produce Bank until in August, 1896, when they suspended business, and the bank went into the hands of an assignee.

January 8, 1895, appellee made a deposit of $225 in the savings department of the bank, and a deposit or bank book was given to him, on the outside cover of which was printed in large letters, "Haymarket Produce Bank, Arnold Bros., Baker & Co., Bankers," and on the inside first page was printed in large letters the word "Conditions," underneath which was also in much smaller type the following: "on which we receive deposits, and which are by the acceptance of this book, agreed to by the depositor." Further down on the same page, as one among many other of the conditions, appears the following:

" On making the first deposit, the depositor shall subscribe his or her name in the signature book kept for that purpose. Such book contains a copy of the conditions under which we receive deposits, and any person signing such book will be deemed to have assented thereto and to all the provisions thereof."

Also a further condition, that the bank would pay interest at four per cent per annum semi-annually, in January and July of each year, on sums of $5 or upward, which had been deposited for one month or more previous to the interest day. On the second page, which is a continuation of said conditions, also appears the following :

" We may allow moneys to be withdrawn or paid on account of savings deposits at any time during business hours. But because it is necessary to loan out our funds to enable us to pay interest, and as time to get in the same may sometimes be desirable, we therefore reserve the right, and make it a condition on all savings deposits, to demand and have sixty days' previous notice, in writing, as a condition of payment on all sums exceeding one hundred dollars, and thirty days' notice, on smaller sums whenever, in our opinion, the same may be deemed advisable; and all savings deposits shall be made and received subject to these conditions."

On the fourth and fifth pages of the same book, it is headed in large letters, " Dr., Arnold Bros., Baker & Co., in account with Charles Hart, Cr.;" lower down on page four is the word " Receipts," and on page five the word " Payments." Following these words on the respective pages, and the succeeding pages of the book, are entered deposits made by Hart with the bank, and payments by the bank to Hart, with the dates of each respectively, commencing January 8, 1895, the last deposit being August 1, 1896, and the last payment being May 1, 1896, the deposits being twenty-four in number, and the payments twenty-eight. The aggregate of the receipts and interest, less payment, is $1,164.48, the amount of appellant's judgment.

Each time appellee made a deposit or received money

from the bank, he went personally and did the business with either Bodenschatz, who was receiving and paying teller, or with Peter Boyesen, who sometimes assisted at this work. Bodenschatz or Boyesen made all the entries in Hart's bank book. When each payment was made, Hart signed, at a desk near where he received it, a receipt for the money, the receipts prior to the dissolution being on a printed form which, when filled, is as follows:

> " Haymarket Produce Bank.
> Arnold Bros., Baker & Co.
> Book No. 359.          Savings Department.
> Chicago, October 23, 1895.
> Received of Arnold Bros., Baker & Co., the sum of ten dollars ($10).
> Charles Hart."

Which is stamped in red ink, (not quite legible in the original, which has been examined by the court), viz: " Haymarket Produce Bank, Arnold Bros., Baker & Co. Paid, October 23, 1895, Chicago Ills."

After the dissolution the receipts were on a similar printed form of about the same size, color and general appearance of the other form, which, when filled, is:

> " Haymarket Produce Bank.
> Howe & Bodenschatz.          Book No. 359.
> Savings Department.
> Chicago, November 11, 1895.
> Received of Howe & Bodenschatz, the sum of ten dollars.
> $10.          Charles Hart."

On which is stamped in red ink (quite legibly in the original, which has been examined by the court), viz.: " Haymarket Produce Bank.  Howe & Bodenschatz.  Paid, Nov. 11, 1895, Chicago, Ills."

Hart testifies that he never read any of the receipts; would see that the amount he received each time was correctly stated in the receipt and sign it, and never noticed the names of Howe & Bodenschatz. On both forms the words " Haymarket Produce Bank " are the most prominent, but the words " Arnold Bros., Baker & Co." and

"Howe & Bodenschatz" are also quite prominent, and in the same kind and size of type. Hart, who is a fireman, passed the bank on the street once or twice a month, and lived six or seven blocks from it.

November 6, 1895, the day after the dissolution of the old firm, the sign on the bank window was changed. What the sign was before the change does not appear from the evidence. The changed sign read, viz., "Haymarket Produce Bank," in large letters, about twelve inches high, the whole length being about twelve feet, and underneath these, about six inches, were the words "Howe & Bodenschatz, successors to;" the whole length of these words being three and one-half to four feet, and the letters about six inches high. It was a piece of glass hung up inside the bank. Underneath these letters on the window, in large letters, but not as large as those in the words "Haymarket Produce Bank," were the words "Arnold Bros., Baker & Co." This sign could be easily seen and read by any one from the street.

Early in December, 1895, the new firm had printed 2,500 calendars, on which the names of Howe & Bodenschatz plainly appeared, both above and below the words "Haymarket Produce Bank." These were kept lying about the windows of the bank, so that any one could get them, and Bodenschatz swears they were given out to all the customers. He also says the stationery of the bank was changed and some cards printed. Hart swears that no one of the old firm ever told him that it had been dissolved; that he never saw any of the calendars; didn't notice the change in the sign, and never heard of the retirement of appellants from the old firm until after the last deposits were made. Neither of appellants had anything to do with the business of the bank after the dissolution. Hecker, a depositor in the bank, swore that he knew of the change in the bank two weeks after it occurred, and that he talked with a good many people who knew of it. The bookkeeper, Boyesen, also testified that it was generally known in the vicinity of the bank that appellants had withdrawn.

No change was made in Hart's bank book, and appellants'

Arnold v. Hart.

evidence fails to show that he ever had any notice' of the dissolution of the old firm, unless he got it through some of the means above stated, which they claim is sufficient to establish actual notice to him of the dissolution.

1st.  It is claimed the court erred in admitting the bank book in evidence.  Plaintiff proved the partnership; that he got the book at the bank, and that all the entries were made in it at the bank by the clerks.  That was sufficient foundation to justify its admission in evidence.  As to him the partnership continued until it was shown that he had notice of its dissolution, which is a special point of contest in the case.  Southern v. Grim, 67 Ill. 106; Page v. Brant, 18 Ill. 37, and cases cited; Podrasnik v. Martin Co., 25 Ill. App. 303; Frohlich, Gardt & Co. v. Alexander, 36 Ill. App. 425; Colyer on Partnership, p. 163, note.

But it is claimed also, that even if this evidence is competent, still it is immaterial, because the declaration—the common counts—alleges an absolute unconditional promise to pay by all the defendants jointly, and the book shows a conditional promise—that is, a promise to pay after sixty days' notice.  This condition must be construed with reference to the situation, business of the bank and contemplation of the parties at the time Hart became a depositor.  It says the notice would be required " because it is necessary to loan out our funds to enable us to pay interest, and as time to get in the same may sometimes be desirable, we therefore reserve the right, etc.,  *  *  *  whenever, in our opinion, the same may be deemed advisable," etc.  This means that the bank, doing a savings business, had to loan the money of its depositors in order to pay them interest, and in order to carry on that business successfully, it would have to be allowed a reasonable time to get in its funds when called for by the depositors.  When the bank failed and went into the hands of an assignee its business was at an end, and what the depositor and the bank had in contemplation at the time the account was opened had passed away when the bank had closed its doors—was no longer in business.  When it discontinued the banking business it waived

the necessity for a notice or demand by the depositor before he became entitled to sue for his money. By closing its doors and ceasing the banking business, it said, in effect, it would not pay. The law does not require a vain or fruitless thing to be done. Meadowcroft v. People, 163 Ill. 82, and cases there cited.

In Watson v. Phœnix Bank, 8 Met. 217, the declaration was the common counts, and it appeared the deposit was not due until demand made; it was held there could be a recovery in the absence of any showing of demand, the bank having closed its doors and suspended payment. In Davis v. Industrial Mfg. Co., 19 S. E. Rep. 371, where the deposit was not payable until after thirty days' notice, it was held it became due *eo instanti*, when the bank closed its doors. See, also, to same effect, Wheeler v. Commercial Bank, 46 Pac. Rep. 830, and Board, etc., v. Irish Am. Bk., 71 N. W. Rep. 674.

Counsel for appellants have not pointed out any evidence which they claim the court improperly rejected, and we therefore assume that all errors assigned in this regard are abandoned.

2d. Appellants' claim that the evidence is not sufficient to sustain the verdict, is waived by failing to ask the court to give a written instruction at the close of the evidence to find for defendants, but instead thereof asking such instruction, along with others, on the issues of fact submitted to the jury. Hurd's Rev. Stat., Ch. 110, Sec. 52; West Chicago St. R. R. Co. v. Yund, 169 Ill. 47; West Chicago St. R. R. Co. v. Fishman, 169 Ill. 196, and cases cited.

But conceding that there was no waiver in this regard, the only question raised on the sufficiency of the evidence is as to whether there was notice to Hart of the dissolution of the old firm prior to his last deposits. The burden of proof, Hart having shown the existence of the partnership, was on appellants to show that he had gotten notice of the dissolution, before they could escape a joint liability with Howe and Bodenschatz, who continued the banking business after November 5, 1895, and with whom all Hart's deposits were made after that date.

Arnold v. Hart.

Counsel for appellants contend that they, having by verified plea denied joint liability, that cast the burden on appellee to show the joint liability, and it appearing from the whole evidence that in fact there was a dissolution November 5, 1895, of the old firm, the burden was still on appellee to show that he did not get notice of the dissolution. We think this contention can not be maintained, because, as we have held, it was first shown that a partnership existed between appellants and Howe and Bodenschatz, and as to appellee it will be presumed that it continued until it was shown by appellants, not only that the partnership had been dissolved, but that appellee got notice of the dissolution. The evidence as to notice did not, in our opinion, show so conclusively that appellee had notice of the dissolution that it can be held, as matter of law, that he had actual notice, but that it presented an issue of fact from which the jury, under proper instructions, should determine whether or not there was notice to him. Nor can we say that there was a preponderance of the evidence that appellee had notice. That was a question for the jury, and while the evidence would have justified a finding that he had notice, on the other hand, if the jury believed the evidence of appellee, they were also justified in finding that he did not have notice. Meyer v. Krohn, 114 Ill. 574; Young v. Clapp, 147 Ill. 189; Carmichael v. Greer, 55 Ga. 116; Uhl v. Bingaman, 78 Ind. 365; Reading Braid Co. v. Stewart, 45 N. Y. Supp. 1129; Putnam v. French, 53 Vt. 402; Coggswell v. Davis, 65 Wis. 191; Newcomet v. Brotzman, 69 Pa. St. 185; American L. T. Co. v. Wortendyke, 24 N. Y. 551.

As to this point of notice, we find nothing in the cases of Barfoot v. Goodall, 3 Camp. 147, and Kehoe v. Carville, 51 N. W. Rep. 166, relied upon by appellants, in conflict with the cases last above cited. In the Kehoe case, where the persons claimed to hold the outgoing partner of a firm on transactions with the new concern, the court held that the fact that the persons dealing with the new concern, after the change, were paid in checks signed in the name of the new concern, which was different from the name in

which checks were signed while they dealt with the old firm, was sufficient evidence of notice to them of the change to overcome their evidence that they did not know of the change, and the finding of the trial court on this question of fact was sustained.

3d.   We have examined the instructions complained of as to all the points made by appellants' counsel, and find in those for appellee no reversible error.   If there was error in the instructions, it was in favor of appellants in giving their second instruction, as modified by the court, in which the jury were told, among other things, that it was necessary for them to find from the evidence, before plaintiff could recover for money deposited after said dissolution, " that all the defendants were members of said partnership, and relying upon such belief he was induced thereby to make such deposits."   This, we think, is not the law, as is shown by the cases cited *supra;* but of this appellants can not complain.

4th.   What has been said sufficiently disposes of the contention that the verdict is contrary to the instructions.

The judgment is affirmed.